566 F.2d 1201
 16 Fair Empl.Prac.Cas. 728, 15 Empl. Prac.
Dec. P 7950
Syvalius WALSTON, Jr., George W. Crocker, Clara Lee, Eula Y.
Baker, Evelyn J. Jones, Darline C. Boone, Dorothy D.
Mozelle, Brenda S. Williams, Thelma L. Corprew, Queen H.
Malone, Celestine E. Whitehead, Roumaine H. Howell,
Josephine A. Gatling, Appellants,
v.
SCHOOL BOARD OF the CITY OF SUFFOLK and Robert A. Wood,
Superintendent of Schools of the City of Suffolk,
Appellees.
UNITED STATES of America, Appellant,
v.
SCHOOL BOARD OF the CITY OF SUFFOLK, and Robert A. Wood,
Superintendent of Schools of the City of Suffolk, and Audrey
C. Selby, Robert E. Parker, Jr., Parke Ashburn, Jr., Thaxton
M. Brown, Sam A. Chilton, Jr., and Roger Knight, Appellees.
 Nos. 76-2433 and 76-2435.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 9, 1977.
Decided Dec. 2, 1977.
 
 James W. Benton, Jr., Richmond, Va. (S. W. Tucker, Henry L. Marsh, III, Hill, Tucker & Marsh, Richmond, Va., Jack Greenberg, New York City, on brief), for appellants in 76-2433.
 Mark L. Gross, Atty., Dept. of Justice (Frank D. Allen, Jr., Atty., Dept. of Justice, J. Stanley Pottinger, Asst. Atty. Gen., Washington, D.C., William B. Cummings, U. S. Atty., Alexandria, Va., on brief), for appellant in 76-2435.
 Frederick T. Gray, Richmond, Va. (Frederick T. Gray, Jr., Williams, Mullen & Christian, Richmond, Va., William Jones, City Atty., Suffolk, Va., on brief), for appellees in 76-2433 and 76-2435.
 Before WINTER, BUTZNER and WIDENER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 In Walston v. County School Board of Nansemond County, Va., 492 F.2d 919 (4 Cir. 1974), we reversed an order of the district court denying injunctive relief, reinstatement and back pay to certain black teachers formerly employed by the County School Board of Nansemond County, Virginia, and remanded the case for further proceedings.* One of our principal holdings was that teachers who were discharged because they had failed to obtain a score of at least 500 on the Weighted Common Section of the National Teachers Examination (NTE) had been discharged for racially discriminatory reasons. On remand, we directed that (1) teachers whose employment was terminated because they failed to make a score of at least 500 on NTE "must be reinstated with back pay and their damages, if any, settled"; (2) "(i)njunctive relief must be granted in such terms as will insure that further discrimination in the employment and retention of teachers . . . will not recur"; and (3) the district court "may grant such other and further relief as it deems necessary and appropriate." 492 F.2d at 927.
 
 
 2
 On remand, the district court, inter alia, (1) entered an injunction restraining the defendants from making use of NTE "as a sole basis" for employment, reemployment or termination of a teacher; (2) denied reinstatement and back pay to Syvalius Walston and Elizabeth Pegram upon finding that neither was dismissed because of his race, and, additionally with respect to Pegram, concluding that she could not recover because the United States lacked authority to assert her claim; and, (3) awarded counsel fees to counsel for successful plaintiffs albeit in an amount considerably less than that requested. United States v. School Board of City of Suffolk, 418 F.Supp. 639 (E.D.Va.1976). The correctness of these rulings is challenged by plaintiffs in this appeal. We affirm in part, reverse in part, and remand for further proceedings.
 
 I.
 
 3
 The injunction entered by the district court provided that
 
 
 4
 the defendants . . . are hereby permanently enjoined from discriminating on the basis of race or color in the employment of teachers and other personnel in the City of Suffolk School System. The defendants are further enjoined from making use of the National Teachers Examination as a sole basis for employment, re-employment or termination of services of any teacher or other personnel in the school system.
 
 
 5
 The prohibition against use of NTE was that it not be the sole criterion for employment, reemployment or termination. Thus, the injunction would permit NTE to be considered by the defendants in connection with employment, reemployment or termination of services of any teacher or other personnel as a criterion provided that it was not the sole one.
 
 
 6
 The injunction entered by the district court does not comport with our previous opinion and directions on remand. In the prior case, we stated:
 
 
 7
 What we hold today is not to say that NTE cannot be utilized under any circumstances as one possible type of "objective criteria" under the rule in (Chambers v. Hendersonville City Board of Education, 364 F.2d 189 (4 Cir. 1966). However, it cannot be used as a tool of discrimination; it cannot be used without proper validation studies and job analyses under the rule in (Moody v. Albemarle Paper Company, 474 F.2d 134 (4 Cir. 1973)). Nor can it be administered capriciously in derogation of the guidelines promulgated by the (Educational Testing Service) so as to have a racially disparate impact (emphasis added). 492 F.2d at 927.
 
 
 8
 In order to make the injunction conform to what we decided, it must be modified to enjoin any future use of NTE "without proper validation studies and job analyses." We therefore vacate the injunction entered by the district court and direct it to be reentered with the modification we have indicated.**
 
 II.
 
 9
 The district court made a general award of attorneys' fees to private counsel who represented successful plaintiffs and a specific award to private counsel who represented the plaintiff Howell. For plaintiffs whose claims for reinstatement and back pay were settled, counsel were awarded twenty percent of the stated settlements, and counsel for Howell, whose case was tried, was allowed twenty-five percent of the total damages recovered. In making these awards, the district court took note of the number of hours claimed by plaintiffs' counsel and the fact that if an allowance of compensation were made on an hourly rate, it would greatly exceed the allowance based upon a percentage of the total recovery. The district court concluded, however, that any allowance of reasonable attorneys' fees must be proportionate with the recovery as to each plaintiff, lest the litigation be conducted primarily for the benefit of attorneys. 418 F.Supp. at 648-49 and n.6.
 
 
 10
 Thus, the only factor employed by the district court in awarding counsel fees was the amount of the plaintiffs' recoveries, either by settlement or assessment of damages. The case, however, was one involving the use of NTE; it presented a novel and difficult question, and the right to reinstatement was an issue as well as recovery for lost earnings. Counsel submitted a detailed statement of services rendered showing a total of 984.25 hours over the course of the litigation. The total amount awarded by the district court was only $10,407.40. Unless it is shown that counsel's computation of time was inflated or that the time expended was unnecessary, the fees allowed represented a rate only slightly in excess of $10 per hour, and this rate is less than the minimum rate fixed by the Criminal Justice Act.
 
 
 11
 We think that the district court's award of counsel fees was inadequate. The inadequacy stems from the sole reliance on the amount of monetary recovery. Other factors should have been considered and given weight. The factors which are relevant to the determination of a reasonable fee are identified and collected in Disciplinary Rule 2-106(B), ABA Code of Professional Responsibility (1969). These factors have been recognized and discussed in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corporation, 487 F.2d 161 (3 Cir. 1973); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5 Cir. 1974); and Detroit v. Grinnell Corp., 495 F.2d 448 (2 Cir. 1974). In the instant case, the significant ones appear to be the factors of time and labor, the customary fee in the locality where the services were rendered, the novelty and difficulty of the questions involved and the skill requisite to provide proper representation, the amount of money involved, and the results obtained.
 
 
 12
 While we think that a more substantial award must be made, we decline to fix the amount ourselves, because it may be necessary to receive additional evidence with respect to the need for the number of hours of service claimed by plaintiffs' counsel, the prevailing rates of fees in the community in which the services were rendered, and other factors which may be in contest. We therefore direct that a new award be made by the district court in accordance with the views we have expressed.
 
 III.
 
 13
 We turn next to the claims of the plaintiffs Syvalius Walston and Elizabeth Pegram. Walston was represented by private counsel and Pegram's claim was asserted by government counsel.
 
 
 14
 With respect to Walston, there was evidence having racial implications which related to the reasons for his discharge. There was substantial evidence, however, that he was discharged for noninvidious reasons. While we give no indication how, if we were triers of the fact, we would decide Walston's case, we cannot conclude that the findings of the district court that "it was (not) the race of Walston, rather than the incidents (in which he had been involved), which caused Walston's employment to be terminated" and that "the school board has met its burden of showing that Walston was not dismissed because of his race" were clearly erroneous. 418 F.Supp. at 650. We therefore affirm the denial of reinstatement and denial of an award for back wages with respect to Walston.
 
 
 15
 With regard to Pegram, we consider first defendants' contention that, as concluded by the district court, Pegram is precluded from recovery by the lack of authority of the United States to proceed on her behalf. This issue was the subject of extended consideration by the district court and it is one which has been argued broadly by the parties. We conclude that the district court erroneously ruled that Pegram's claim could not be asserted by the United States, but we do not find it necessary to address the issue so broadly.
 
 
 16
 In the previous appeal, the panel held that "teachers terminated because of their failure to make a 500 score on the test must be reinstated with back pay and their damages, if any, settled." 492 F.2d at 927. In that appeal, some teachers appeared by private counsel and some by the representation provided them by the United States which had moved to reopen a long-pending desegregation case, inter alia, to obtain supplemental relief for discharged black teachers who had been discharged because the school board had instituted an NTE qualification plan. Manifestly, the statement of the prior panel applied to both types of teacher litigants. In effect, it decided sub silentio that the United States could obtain redress of the rights of teachers discriminatorily discharged. Since no further review of our prior decision was sought or obtained, we think that it has become the law of the case. We follow it and turn, therefore, to the merits of Pegram's claim.
 
 
 17
 The district court concluded that Pegram was not rehired for the 1971-72 school year because she was deficient in the areas of student discipline and academic ability, that the decision not to rehire her was not the result of her having failed to obtain at least 500 on the NTE and that, although pregnant and unable to teach for the 1971-72 school year, she was not rehired thereafter because she did not apply for appointment. We think these findings are clearly erroneous.
 
 
 18
 Pegram was pregnant and unable to teach in the 1971-72 school year, but she was told in the Spring of 1971 that she would not be reemployed for 1971-72 because of her lack of a 500 score. All of the school board's records confirm that lack of the 500 score was why she was not reemployed. It is true that her principal, who gave her an acceptable evaluation and recommended her reappointment, testified that he did so only because he knew that she was pregnant and would be unable to teach and he did not want to destroy her chances for employment elsewhere. But the record demonstrates overwhelmingly that the principal did not know that she was pregnant until after his evaluation and recommendation. Indeed, Pegram testified that she did not know that she was pregnant until after she was advised that she would not be reemployed.
 
 
 19
 Thus, the record evidence that Pegram was not reemployed because of the lack of the 500 score stands unrebutted; and, in accordance with the prior decision of this court, Pegram is entitled to reinstatement and back pay. Of course, she may not recover for the school year during which she was pregnant and unable to teach, but she is entitled to recovery for 1972-73 and subsequent school years. The fact that she did not seek reemployment for the 1972-73 school year does not bar her, as the district court held, because she will not be held to make the futile gesture of applying for a position for which she had previously been told that she was unqualified. The evidence of her efforts to obtain employment from other school districts and other schools overcomes defendants' contention that she did not desire further employment after her child was born.
 
 IV.
 
 20
 To summarize, we vacate the injunction and direct that it be reentered in modified form. We vacate the award of attorneys fees and direct a new award in accord with the views we express. We affirm the denial of recovery to Walston. We reverse the denial of recovery to Pegram and direct that she be given an award in accord with the views we express.
 
 
 21
 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
 
 
 22
 WIDENER, Circuit Judge, concurring and dissenting:
 
 
 23
 While I concur in most of the opinion by the court, because I believe the district court properly decided, within the range of its discretion, the issue of attorneys' fees, I respectfully dissent from Part II thereof.
 
 
 24
 The majority's criticism of the district court's decision focuses on its "sole reliance on the amount of monetary recovery" as the basis for formulating the amount of attorneys' fees to be awarded,[1] and the court reverses because the district court should have considered a number of other factors enunciated in Disciplinary Rule 2-106(B), ABA Code of Professional Responsibility. But, while such consideration might be proper or even advisable in the usual case, I do not believe that it should stand as an absolute prerequisite which demands reversal of the district court under these circumstances.
 
 
 25
 No one disputes that the sole basis for the award of attorneys' fees in this case is 20 U.S.C. § 1617.[2] That section gives the district court discretionary power to give attorneys' fees to the prevailing party. Here, there were a number of plaintiffs with a number of claims; however, while several plaintiffs failed, the detailed statement of hours worked failed to delineate between the time spent for the successful, as opposed to the unsuccessful, parties. For this, if for no other reason, the majority's concern over the low hourly rate reached when the total number of hours spent is divided into the total attorneys' fees awarded is unpersuasive.[3] The fact that the United States was the principal plaintiff and carried the principal burden also should be taken into account.
 
 
 26
 I think the district court's formulation of the amount of attorneys' fees, linked as it was to a party's recovery, was rationally designed to gauge the services actually rendered on behalf of the prevailing parties. I also think the district court did not fail to consider, as the majority intimates, the involvement of the issue concerning the right to reinstatement. In the case of the plaintiff Howell, for example, the only plaintiff to gain reinstatement, the court awarded fees equal to 25% Of his damages, while the award for the remaining plaintiffs, who did not gain reinstatement,[4] was only 20% Of their damages.
 
 
 
 *
 Nansemond County has been merged into the City of Suffolk. The School Board of the City of Suffolk has assumed the obligations of the County School Board of Nansemond County and has been substituted for it in this litigation
 
 
 **
 As modified, the injunction will not prohibit the use of NTE scores in connection with employment, reemployment or termination of services if the test is validated for use for that purpose. That NTE scores may be validated for such purposes is demonstrated by United States v. South Carolina Educational Association, --- F.Supp. ---- (D.S.C.1977). See also Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). In the instant case, validating evidence was not offered and we cannot take judicial notice that it exists
 
 
 [1]
 In its opinion, the district court states that " . . . the Court is of the opinion that attorneys' fees in the sum of twenty (20) percent of the stated settlements should now be paid to counsel for the named plaintiffs in No. 472-71-N. With respect to Howell, who is a named plaintiff deemed entitled to recover as hereinafter stated, the Court allows twenty-five (25) percent in addition to the damage recovery."
 
 
 [2]
 "Upon the entry of a final order by a court of the United States against a local education agency, a State (or any agency thereof), or the United States (or any agency thereof), for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin in violation of title VI of the Civil Rights Act of 1964, or the fourteenth amendment to the Constitution of the United States as they pertain to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."
 
 
 [3]
 The only hours which are pertinent to the award of fees under § 1617 are those worked on behalf of prevailing plaintiffs
 
 
 [4]
 The district court stated, in its opinion, "And, with the exception of Howell whose case was not settled, we assume further that the settling plaintiffs have waived any right to reinstatement although the terms of the settlements as stated in open court make no reference to the reinstatement."