**VIRGINIA ACADEMY OF CLINICAL PSYCHOLOGISTS, et al.,**

v.

**BLUE SHIELD OF VIRGINIA, et al.**

**Civ. A. No. 81–1069–A–R.**

United States District Court, E. D. Virginia, Richmond Division.

May 7, 1982.

Timothy J. Bloomfield, Warwick R. Furr, II, Thomas M. Brownell, Lewis, Mitchell & Moore, Vienna, Va., for plaintiffs.

R. Gordon Smith, Gilbert E. Schill, Jr., McGuire, Woods & Battle, Richmond, Va., for defendants.

## MEMORANDUM OPINION

WARRINER, District Judge.

This matter is before the Court on plaintiff's motion for attorney's fees pursuant to Section 16 of the Clayton Antitrust Act as amended by Section 302(3) of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 26 (hereinafter the "Antitrust Fee Act"). The facts giving rise to the action on the merits are set out in prior opinions of this Court and that of the Court of Appeals for the Fourth Circuit. *See Virginia Academy of Clinical Psychologists v. Blue Shield of Va.*, 469 F.Supp. 552 (E.D.Va.1979), *aff'd in part and vacated in part*, 624 F.2d 476 (4th Cir. 1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981). A procedural review, however, is helpful to an understanding of the Court's fee award.

### I

The underlying suit grew out of an effort by the Virginia Academy of Clinical Psychologists (VACP) to overturn the reim-

bursement policy of the Blue Shield plans that required clinical psychologists to bill through a licensed physician. VACP initially contacted Warwick R. Furr, Esq., to determine the feasibility of an antitrust action. Furr agreed to conduct a preliminary study at the rate of $50.00 per hour.[1] In May 1978, Furr joined the firm of Lewis, Mitchell & Moore which agreed to undertake the VACP suit along with the firm of Dunnells, Duvall, Bennett & Porter.

VACP was concerned from the outset about the costs of the prospective litigation. Furr and Timothy J. Bloomfield, Esq., who was the senior counsel from the Dunnells, Duvall firm involved in the VACP case, agreed to a $10,000.00 ceiling on costs for the first year of litigation with a reassessment thereafter.[2] They informed VACP that they expected to receive full compensation pursuant to the fee provisions of the Antitrust Fee Act. Their one caveat was that if the case were resolved *during* the first year, VACP would pay them the difference between $10,000 and any lesser amount that was actually expended on costs incurred pursuing the litigation. As a practical matter the $10,000 mark was reached long before the expiration of one year.

VACP and several of its members filed suit on 14 July 1978, in Alexandria, Virginia, against Blue Shield of Virginia (BSV), Blue Shield of Southwest Virginia (BSSW), the Neuropsychiatric Society of Virginia (NSV), and the Medical Society of the District of Columbia (MSDC). The suit was hotly contested and defendants fusilladed plaintiffs with every conceivable motion that could be asserted under the Federal Rules of Civil Procedure. Intense discovery was conducted in a period of five and one-half months. On 10 October 1978, the Court dismissed a companion suit to the instant matter proceeding under the style of *McCready v. Blue Shield of Virginia*, C.A. No. 78–0497–A (E.D.Va. 10 Oct. 1978). MSDC was dismissed as a defendant by joint motion on 31 October 1978.

The trial, which was held in Richmond, Virginia, for the Court's convenience, lasted four days and was followed by submission of post trial briefs. Judgment was entered for all defendants in April 1979. Plaintiffs successfully appealed to the Court of Appeals for the Fourth Circuit which affirmed this Court's decision as to NSV but reversed as to BSV and BSSW. Plaintiffs successfully resisted defendants' efforts to obtain a rehearing in the Fourth Circuit and a petition for writ of certiorari to the United States Supreme Court.

The mandate from the Fourth Circuit was returned to this Court in July 1980.

---

1. At the time, Furr was a law professor and his fee reflected the lack of overhead and the investigative nature of his assignment. Furr has made no claim against defendants for hours spent during this stage.

2. The nature of the "agreement" between VACP and counsel is set out in an affidavit of Robert J. Resnick who is a plaintiff in this case and who was president of VACP during negotiations with Furr and Bloomfield concerning their representation of VACP.

During the course of our discussions and negotiations, we agreed that Mr. Furr and Mr. Bloomfield would represent us in this litigation and that, as a term of that agreement, a ceiling of $10,000 would be imposed with respect to expenses during the first year of litigation, since Mr. Furr and Mr. Bloomfield both hoped that a quick injunctive suit or settlement would be litigated at modest expense.

This $10,000 ceiling was a budget-planning figure for VACP to rely upon in raising funds to make certain that we could meet our obligations as plaintiffs for the payment of costs and expenses, since we knew that we would be legally obligated to pay those expenses, even if Mr. Furr and Mr. Bloomfield advanced them and were later unsuccessful in the litigation.

It was our understanding that we would not pay any fees to Mr. Furr or Mr. Bloomfield out of the $10,000 initially budgeted unless they concluded the case so quickly that $10,000 in costs and expenses had not yet been incurred. In that event, the remainder of the $10,000 (after costs were deducted) would be available to contribute to payment of their fees.

It was always our understanding that as plaintiffs we would be entitled to an additional statutory award of attorney's fees under the antitrust laws and that these monies would be paid to Messrs. Furr and Bloomfield as their compensation in this case.

Since then, defendants have endeavored by all available means to minimize the effect of that Court's mandate. Though defendants' efforts have painfully protracted the matter, such that the post-remand proceedings seem to dwarf all that has gone before, they have been generally unsuccessful.

The battle over attorney's fees is certainly the most intensely contested aspect of the entire suit, reflected in the morass of nine briefs and several volumes of exhibits. Defendants have based their challenge to plaintiffs' claim for fees on whether plaintiffs "substantially prevailed" on the merits, whether concurrent events mooted plaintiffs' claim for relief, and whether plaintiffs fees should be reduced to reflect aspects of the case where plaintiffs did not prevail.

Following the denial of certiorari by the Supreme Court in February of 1981, this Court entered judgment in favor of plaintiffs and directed defendants to take certain actions. That order was subsequently modified when it became apparent that the need for prospective injunctive relief was no longer necessary.[3] In the end, this Court only had to require defendants to notify practicing Virginia clinical psychologists of the Fourth Circuit's decision and to direct them to retain certain records.

On 9 March 1982, VACP and BSSW advised the Court that all matters between them had been compromised and settled, leaving only BSV as a party defendant to the litigation. In response to BSV's motion for an order to disclose the terms of the settlement, plaintiffs filed a description of the terms of the settlement under seal. As updated by a subsequent filing under seal, these papers purportedly set forth the terms of settlement between VACP and BSSW, including the allocation for attorneys' fees.

At a hearing held on 20 April 1982, the Court determined the effect that the BSSW settlement would have on BSV's liability for attorneys' fees.[4] The Court also determined that it would open the sealed documents only after determining the proper fee award for the case as a whole.

## II

■ The Court has previously determined that plaintiffs "substantially prevailed" within the meaning of § 16 of the Clayton Act. 15 U.S.C. § 26. *Virginia Academy of Clinical Psychologists v. Blue Shield of Va.,* C.A. No. 78–496–A (now C.A. No. 81–1069–A–R) (E.D.Va. 30 Mar. 1981) (vacated in part and modified by orders of 5 August and 6 October 1981). The Court emphasized then that plaintiffs had gained relief to which they were not otherwise entitled under the State proceedings, and that the existence of alternative State administrative remedies did not warrant this Court disregarding the gains made in federal court. *Id.*

The Court reaffirms that plaintiffs "substantially prevailed" in this action. Defendants' argument to the contrary is without merit. This Court denied plaintiffs prospective relief only because of the chronology of circumstances. Plaintiffs were clearly entitled to the relief they sought and this Court would have granted such relief if it had been necessary at the time plaintiffs appeared before the Court. The minimal relief ultimately required by circumstances in no way detracts from plaintiffs' accomplishments in this litigation. Plaintiffs have "substantially prevailed" and will be awarded fees and costs accordingly. *Young v. Kenley,* 641 F.2d 192 (4th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982); *Bonnes v. Long,* 599 F.2d 1316 (4th Cir. 1979). *See also Grumman Corp. v. LTV,* 533 F.Supp. 1385 (E.D.N.Y.1982).

**3.** In August 1980, the Supreme Court of Virginia upheld the constitutionality of a Virginia statute requiring the Blue Shield plans to reimburse clinical psychologists directly. *Blue Cross & Blue Shield of Virginia v. Commonwealth,* 221 Va. 349, 269 S.E.2d 827 (1980). This in turn was the basis for a 15 Sept. 1980 order of the Virginia State Corporation Commission which effectively barred defendants from refusing to make direct payments.

**4.** The Court's reasoning as to this issue is set forth in Part VII, *infra.*

## III

Section 16 mandates this Court to award plaintiffs, "the costs of the suit, including a reasonable attorney's fee." 15 U.S.C. § 26. The heart of the present litigation and the source of considerable inconclusive litigation elsewhere is centered on the necessary determination of what is "reasonable."

The Fourth Circuit, in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978), adopted the Fifth Circuit's general procedure for handling statutory attorney fee awards. Id. at 226, citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Barber* directs that fees shall be awarded based upon the Court's consideration of twelve enumerated factors.[5] In *Anderson v. Morris*, 658 F.2d 246 (4th Cir. 1981), the Fourth Circuit furnished additional guidelines on how to apply the *Barber* factors. The Court:

> instructed district courts to first ascertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation. These are essentially *Johnson* factors 1 and 5. The court should then multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for the fee award. Finally, the court should adjust the fee on the basis of the other factors, briefly explaining how they affected the award. *In Re First Colonial Corp. of America*, 544 F.2d 1291, 1298–1300 (5th Cir. 1977). *See also Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 581–84 (5th Cir. 1980). 658 F.2d at 249.[6]

The *Anderson* Court cautioned that the fee determination is not a mechanical exercise. The Court must consider, *inter alia*, what hours may reasonably be included, whether the involvement of more than one firm resulted in duplication of effort, and what different rates of compensation should apply to various services, "such as those performed by partners and associates. Moreover, in determining both time and rate, the judge must evaluate the quality as well as the quantity of the attorney's work." *Id.* at 249. The Court concluded by summarizing that, "[the court] should, however, begin with a figure based on the number of hours reasonably expended multiplied by a reasonable hourly rate and then explain any adjustment of these figures either up or down because of the other *Johnson* factors listed in *Barber*." *Id.* (emphasis supplied).

The instant dispute over attorneys' fees derives from the divergent judicial interpretations of how these standards are to be applied to different statutes authorizing fees. *Barber* and *Anderson* do not instruct whether their standards are to be applied equally to all manner of attorneys' fee claims. *Anderson* was, in effect, a civil rights suit. Fees were authorized pursuant to The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (hereinafter the "Civil Rights Fees Act" or "Act"), which was passed during the same session as the Hart-Scott-Rodino Antitrust Improvements Act. The legislative history of the Civil Rights Fee Act provides that the standards for awarding attorney's fees under that Act should be the "same standards which prevail in other types of equally com-

---

5. The *Barber* criteria are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases. 577 F.2d at 226 n. 28.

6. In *Copper Liquor, Inc. v. Adolph Coors Co., supra*, cited with approval in *Anderson*, the Fifth Circuit suggested that factors 8 and 9 also merited special attention. *Id.* at 583.

plex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be non-pecuniary in nature." S.Rep.No. 94–1011, 94th Cong., 2nd Sess. 6, *reprinted in* [1976] U.S.Code Cong. & Ad. News 5908, 5913 (hereinafter "Senate Report"). The Senate Report cites *Johnson v. Georgia Highway Express, Inc., supra,* as enumerating the correct standards to apply in awarding attorney's fees under the Act. The Fifth Circuit has subsequently stated that there is no reason why the *Johnson* guidelines should not be "equally useful whenever the award of reasonable attorney's fee is authorized by statute." *In re First Colonial Corp. of America,* 544 F.2d 1291, 1299 (5th Cir. 1977).

The Senate Report stresses that the purpose of the Act is to insure that citizens have an opportunity to recover what it costs them to vindicate their rights in court. S.Rep., at 5910–13. Having set out the cases where the *Johnson* standards were correctly applied,[7] the Report concludes: "These cases have resulted in fees which are adequate to attract counsel but which do not produce windfalls to attorneys. In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter'." S.Rep. at 5913 (citations omitted).

Attorneys' fees are authorized for successful plaintiffs both in private treble damage actions pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, and in suits for injunctive relief pursuant to Section 16 of that Act. 15 U.S.C. § 26. Under Section 4, however, fees are awarded only to a plaintiff who establishes that he has suffered injury to his business or property. Section 4 is barren of the "prevailing" or "substantially prevailing" terminology of both Section 16 and the Civil Rights Fee Act, and an award is authorized only if there is a final judgment on the merits.

The language of Section 16 is similar to that of the Civil Rights Fee Act. The attorney fee language of Section 16 differs from the Civil Rights Act only in that a Section 16 award is mandatory if the plaintiff "substantially prevails" whereas a Section 1988 award is discretionary for a "prevailing" party. The similarity of language between Section 16 and the Civil Rights Fee Act, the judicial application of the Civil Rights Fee Act, and the legislative history of the Antitrust Fee Act suggest that courts should be less niggardly in the award of fees to the substantially prevailing party in a Section 16 case than has been the practice in Section 4 cases. *See* H.R.No.94–499–Pt. I, 94th Cong., 2nd Sess., *reprinted in* [1976] U.S.Code Cong. & Ad.News, 2572 (hereinafter "House Report"). The House Report, which recognized that the incentive of attorneys' fees provided in Section 4 cases should be extended to Section 16 cases so that "prevailing plaintiffs can recover attorneys' fees in meritorious and successful injunction cases . . . .", went on to stress the difference between Sections 4 and 16.

> [W]ithout the opportunity to recover attorneys' fees in the event of winning their cases, many persons . . . would be unable to afford or unwilling to bring antitrust injunction cases.
>
> Indeed, the need for the awarding of attorneys' fees in § 16 injunction cases is greater than the need in § 4 treble damage cases. In damage cases, a prevailing plaintiff recovers compensation, at least. In injunction cases, however, without the shifting of attorneys' fees, a plaintiff with a deserving case would personally have to pay the very high price of obtaining judicial enforcement of the law and of the important national policies the antitrust laws reflect. A prevailing plaintiff should not have to bear such an expense. Section 3(3) . . . is intended to reiterate congressional encouragement for private parties to bring and maintain meritorious antitrust injunction cases. Under this section, a plaintiff who sub-

---

7. *See Stanford Daily v. Zurcher,* 64 F.R.D. 680 (N.D.Cal.1974); *Davis v. County of Los Angeles,* 8 E.P.D. ¶ 94444 (C.D.Cal.1974); *Swann v.*

*Charlotte-Mecklenburg Board of Education,* 66 F.R.D. 483 (W.D.N.C.1975).

stantially prevails would be entitled to the award of "reasonable attorneys' fees".

H.R. Rept. at 2589–90.

Notwithstanding the inferences that might be drawn from this language, there is a paucity of judicial guidance on whether the relatively strict standards applied in Section 4 cases is to be applied equally to Section 16 cases or whether the Court should apply a standard more in line with awards under the Civil Rights Fee Act. This Circuit has yet to decide a case for the award of attorneys' fees under Section 16 but the language of *Anderson*, this Court's consideration of related authority which reveals an "apparent lack of distinction between civil rights and antitrust cases" as to the awarding of attorneys' fees, *Black Gold, Ltd. v. Rockwool Industries, Inc.*, 529 F.Supp. 272, 278 (D.Col.1981), and practical considerations convinces the Court that it should look to the policies of the Civil Rights Fee Act for guidance in determining an appropriate award in the instant case.

Plaintiffs seek compensation for fees that reflect 4362.85 hours of attorney, law clerk, and paralegal time between March 1978 and 30 September 1981.[8] They assert that these hours should be compensated at "current rates" amounting to a "lodestar" fee of $412,222.75 which in turn should be increased by a "multiplier" of between two and three, for a total fee award of between $824,445.50 and $1,236,668.20. By contrast, defendants suggest that plaintiffs should receive approximately $29,000.00. Thus it might be said that the parties are right far apart.

*1. Time and Labor Expended. Anderson* directs the Court to first "ascertain the nature and extent of the services supplied by the attorney[s] from a statement showing the number of hours worked and an explanation of how these hours were spent. 658 F.2d at 249. Plaintiffs may recover fees only for those hours which the Court determines to have been reasonably included in the fee petition. *Id.*

The obvious starting point is the 4362.85 hours claimed by plaintiffs.[9] Of this total, 3910.7 hours are attributable to attorney time and 452.15 hours are attributable to paralegals and law clerks. Plaintiffs have substantiated their claim by furnishing daily time records which for the most part include a description of the services performed. Plaintiffs have also furnished the Court with compilations of these hours reflecting monthly totals and percentages of time devoted to different aspects of the case.

Defendants do not seriously contend that the hours claimed were not expended. They do suggest, without support, that plaintiffs "inflated" the number of hours spent on the case. Defendants' contention is that plaintiffs' claimed hours should be reduced by approximately 78%. Defendants' grounds are that plaintiffs failed to keep sufficiently detailed records to indicate how their time was spent; that the participation of two law firms resulted in unnecessary duplication; that plaintiffs over-prepared the case; that time should be deducted for any time spent litigating against parties over whom plaintiffs did not prevail or on issues on which plaintiffs did

**8.** Pursuant to an agreement between the parties, the fee petition reflects only Mr. Bloomfield's time between March and June 1978. Mr. Furr agreed that he would not submit an application for any time spent prior to June 1978. Such time would have included the time spent by Mr. Furr while conducting a feasibility study of the instant antitrust action. Plaintiffs emphasize that they have been conservative in their application and have voluntarily subtracted a number of hours and other charges. Plaintiffs are, of course, free to subtract whatever they wish. Such subtractions, however, have no bearing on the deductions which this

Court may determine to be necessary. The Court notes that a considerable number of hours have probably been expended since September 1981 which are not reflected in the fee petition. Nothing in this award shall be construed to limit plaintiffs in seeking such further relief regarding attorney fees to which they are otherwise entitled.

**9.** This sum reflects minor adjustments by the Court to the hours claimed by plaintiffs in correcting discrepancies between hours recorded on daily timesheets and the various compilations provided by plaintiffs.

not prevail; that there should be a deduction to reflect the minimal relief granted by the Court; that that time spent on the *McCready* case but claimed on the VACP fee petition should be subtracted.

The Court emphasizes at the outset that this case has been bitterly contested by both parties. So much so that counsel have on several occasions become so enmeshed in personal haggling with each other that it has taken the assistance of the Court to return them to matters at hand. The Court realizes that defendants had much more at stake than did plaintiffs, and understands defendants' apparent decision to pull out all stops, to raise every reasonable objection and to create every arguable obstacle to plaintiffs' progress in this case. Plaintiffs have asserted that much of their time has been devoted to responding to defendants' barrages, and the Court's review of the docket entries substantiates plaintiffs' position. Defendants are certainly entitled to use whatever means they choose in an effort to forestall plaintiffs; there was nothing improper in defendant's litigation tactics, but they may not complain to the Court about the hours plaintiffs naturally expended in response. *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C.Cir.1980) (en banc). *See also, Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1977).

Plaintiffs suggest that because they were outmanned by defense counsel they should in some way be rewarded. The Court disagrees. Plaintiffs all shared the same claim and needed only the number of counsel that they had. Conversely, there were initially four defendants, subsequently reduced to three, and then two, and finally one. Each had divergent interests that had to be represented and plaintiffs had to expect such opposition when they undertook this litigation and named the parties defendant. The Court is impressed by the way plaintiffs' counsel met the opposition. For this, counsel are to be commended and under *Barber* criterium (3) they may be financially rewarded, if appropriate. *See Siegal v. Merrick*, 619 F.2d 160, 165 (2d Cir. 1980).

Plaintiffs also suggest that in calculating the fee the Court should consider that defendants expended almost 14,000 hours, approximately three and one-half times the hours expended by plaintiffs. While the Court sees no direct correlation between the number of hours spent by plaintiffs and defendants, other than noting that three defendants pursuing independent routes might each expend the number of hours claimed by plaintiffs, the massive effort evidenced by defendants' hours supports the Court's belief that plaintiffs' hours were solid and necessary to the case.

Defendants assert that plaintiffs' hours must be reduced to reflect inadequate record keeping. They state that 176.85 hours through July 1981 are not itemized and that "hundreds" of other entries are insufficiently detailed. Plaintiffs have the burden to keep adequate records sufficient to substantiate their time, *Knutson v. Daily Review, Inc.*, 479 F.Supp. 1263, 1269 (N.D.Cal.1979), and such doubts as exist must be resolved against plaintiff. *Kane v. Martin Paint Stores, Inc.*, 439 F.Supp. 1054, 1056 (S.D.N.Y.1977), *aff'd mem.*, 578 F.2d 1368 (2d Cir. 1978).

The Court has before it counsels' affidavits that all the time claimed was spent on the instant matter. The daily records show that no time has been estimated, *see Williams v. Schatz Mfg. Co.*, 449 F.Supp. 147 (S.D.N.Y.1977), and the Court, in most instances can glean the general activity being conducted. *See King v. Greenblatt*, 560 F.2d 1024 (1st Cir. 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D.Cal.1974), *aff'd*, 550 F.2d 464 (9th Cir. 1977). The records of Messrs. Furr and Bloomfield, plaintiffs' two chief counsel, though not so detailed as to specify particular issues or parties that were under consideration at a given moment, are adequate to satisfy the Court that their time was properly spent on compensable matters pertinent to the instant matter.[10] The Court has reviewed the daily

---

**10.** The Court notes that there is an occasional random entry for such administrative duties as

records of all counsel and finds them to be generally adequate. Only the time of Alan Kriegel fails to identify substantial periods of work, amounting to approximately 35 hours in 1978 and 38.5 hours in a three day period during September and October 1980.[11] The remainder of Kriegel's time is reasonably well documented and the Court has no reason to believe that the unexplained time was spent on other than compensable matters.[12] Defendants' contentions on this point as to a relatively small number of hours in the course of this litigation borders on trivial. Though plaintiffs must not be lax in record keeping, see *King v. Greenblatt, supra,* "[i]t is not the function of the courts in reviewing fees to second guess every minute detail of time spent by an attorney in working on a case." *Unemployed Workers Organizing Committee v. Batterton,* 477 F.Supp. 509, 515 (D.Md.1979). *See also, Clanton v. Allied Chemical Corp.,* 416 F.Supp. 39, 42 (E.D.Va. 1976) ("[T]he Court will give liberal deference to [counsels'] judgment on the amount of time they felt necessary to properly prepare and pursue the case"). The authority to which defendants refer speaks to inadequacies of record keeping that are much more egregious than any laxity shown by counsel in this case. *Compare King v. Greenblatt, supra; Williams v. Schatz, supra; Kane v. Martin Paint Stores, Inc., supra; Wall Products Co. v. National Gypsum Co.,* 367 F.Supp. 972 (N.D.Cal.1973). These cases all involve estimates of both hours expended and the nature of work done over long periods of time. That is not the situation here. Accordingly, no time

will be deducted from plaintiffs' claim on this theory.

■ The representation of one client by two firms may result in duplication of effort which must be discounted. *Johnson v. Georgia Highway Express Co., supra,* at 717. Defendants assert that a 10.2% reduction should be made here on that theory. Plaintiffs deny there was duplication. Plaintiffs were represented by two medium sized law firms. Although 14 attorneys recorded some time over the course of three years, all but incidental amounts are attributable to four attorneys: Furr and Brownell of Lewis, Mitchell & Moore, and Bloomfield and Kriegel of Dunnells, Duvall, Bennett & Porter. Plaintiffs assert that Furr and Bloomfield consciously tried to divide the elements of the case between the two firms to maximize production and minimize duplication.[13] There were 38 depositions during discovery. Plaintiffs' exhibits show that they had three attorneys at one deposition, two at three others, and one at the remaining 34. Defense counsel outnumbered plaintiffs' counsel at most of these depositions. That plaintiffs staffed the case leanly was evidenced at the pretrial conference, at trial and in all other appearances before the Court. Although in some cases an over-abundance of attorneys at depositions, hearings, or at trial may warrant a reduction of allowable time, see *Younger v. Glamorgan Pipe & Foundry Co.,* 418 F.Supp. 743, 792–93 (W.D.Va.1976), *vacated on other grounds,* 561 F.2d 563 (4th Cir. 1977); *Clanton v. Allied Chemical Corp., supra,* at 43, the Court "in relying on its own experience as well as its knowledge

---

billing letters, but there is no evidence that the attorneys in this case spent any significant time on work that might be considered administrative.

11. The Court also notes that approximately 54 hours of law clerk and paralegal time lacks description. Here too, however, the Court has plaintiff counsel's affidavit that the work was devoted to this matter.

12. As a practical matter, only 17.5 of the 35 undocumented hours in 1978 are reflected in the fee petition, the other 50% having been deducted by plaintiffs as *McCready* time.

13. Furr alleges in an affidavit that Mr. Bloomfield and he made a conscious decision early on to split the work in this matter. This policy according to Furr was practiced during depositions, discovery, at trial and in written work, in the latter instance "by allocating the written work between our respective firms rather than by engaging in it simultaneously." The Court rejects defendants' assertions that counsel time was unnecessarily increased because conferences were between members of two firms rather than one firm.

of events in [this] particular case," finds no basis to deduct any hours for duplication of attorney efforts. *Seigal v. Merrick, supra,* at 164.

The Court finds no significant evidence of over-preparation in the case. Defendants buttress their argument to the contrary by reference to the thousands of hours expended on a case which was tried in approximately 40 hours. Approximately 37% of the plaintiffs' hours through September 1981 were expended prior to the filing of post trial briefs. Another 29% were expended on appeal and on related matters before the Fourth Circuit. The remaining 44% has been expended since the case was remanded to this Court. Much of plaintiffs' time particularly in the latter phase has been accrued in responding to defendants' continued vigorous litigation.[14] Defendants particularly object to the 1200 plus hours expended on plaintiffs' appeal. But plaintiffs on appeal had to overcome the adverse determination of this Court which had ruled entirely in favor of defendants. The Court, though recognizing that it is least familiar with this stage of the litigation, finds no basis on which to subtract any time from plaintiffs' successful appeal or the additional time necessarily devoted to overcoming defendants' efforts to obtain a rehearing and otherwise stay the mandate of the Court of Appeals.

■ Notwithstanding these relatively minor, though time consuming, squabbles, the crux of defendants' argument rests on its assertion that plaintiffs failed to prevail against MSDC and NSV and as to several issues and subissues in the case, and should be denied all hours that were devoted thereto. Defendants suggest further that because plaintiffs' records do not specifically correlate particular hours with various issues and parties this Court should apply a percentage reduction based on mathematical or subjective analysis of its own knowledge, experience, and expertise of time required to complete similar activities. *See Knutson v. Daily Review, Inc., supra; Wall*

*Products Co. v. National Gypsum Co., supra,* at 975; *Chapman v. Pacific Telephone & Telegraph Co.,* 456 F.Supp. 77 (W.D.Cal. 1978). Defendants suggest a 60% reduction in hours would reflect plaintiffs' failure to prevail as to the parties and issues in question. Defendants contend that a further reduction of 4.4% should be made to reflect the minimal relief obtained by plaintiff and that there should be a 3.5% reduction to reflect time spent on the *McCready* case but claimed in the present fee petition.

Plaintiffs originally argued that they were entitled to payment for all hours reasonably expended in litigation. At the time they relied exclusively on a Section 4 case, *Pitchford Scientific Instruments Corp. v. PEPI, Inc.,* 440 F.Supp. 1175 (W.D.Pa.1977), *aff'd,* 582 F.2d 1275 (3d Cir. 1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979), wherein a single plaintiff who prevailed over a single defendant was held to be entitled to compensation for all work which a "reasonable and prudent antitrust lawyer would have deemed advisable under the circumstances." *Id.,* at 1177–78. *Pitchford* did not address a multi-defendant situation and plaintiffs have apparently conceded that *Pitchford* does not preclude a deduction for time devoted to matters pertaining *exclusively* to a prevailing defendant which did not benefit plaintiff in other successful aspects of the case. *See Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208 (3d Cir. 1978).

In *Baughman v. Wilson Freight Forwarding Co., supra,* a treble damages action, plaintiff sued five defendants on two different counts. He eventually prevailed against only one defendant on one of the counts, settled with two others and lost on the merits as to the remaining two. The Court of Appeals for the Third Circuit, in reviewing the district court's award of attorneys fees, ruled that fees were justified only for those hours spent in prosecuting the successful claim against the one losing defendant. The Court, looking to the specific language of Section 4 of the Clayton

---

**14.** Plaintiffs assert that 60% of their pleadings, excluding deposition notices, were responsive to materials filed by defendants. The docket entries bear this out.

Act requiring that a plaintiff establish that he was "injured", stated:

We believe this language indicates that fees are to be recovered only from the party against whom liability has indeed been established, and only for the hours reasonably devoted to establishing that liability. We do not believe that a defendant may be required to compensate a plaintiff for attorney hours devoted to the case against other defendants ... who are found not to be liable. To require such compensation would be to allow a fee to a plaintiff for hours expended in an unsuccessful quest to establish liability, which, of course must be established before a fee may be awarded.

583 F.2d at 1214. The court was concerned that "requiring a losing defendant to pay plaintiff for hours spent against non-losing defendants could encourage frivolous claims in an effort to inflate fees", *Id.* at 1215. However, the court also ruled that time attributable to developing a case against a prevailing defendant but which also supported a case against a losing defendant was indeed compensable.

We recognize, of course, "that legal services fairly devoted to the [case against (a losing defendant)] are compensable even though those very same legal services also supported the prosecution of the" case against the other four defendants. *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978) ... so long as the plaintiff can establish that such hours also were fairly devoted to the prosecution of the claim against [losing defendants].

*Id.* at 1215 (footnote omitted). The rule appears to be the same in this Circuit. *See Wheeler v. Durham City Bd. of Educ.*, 88 F.R.D. 27, 32–34 (M.D.N.C.1980), *on remand from* 585 F.2d 618 (4th Cir. 1978). Accordingly, the Court must deduct those hours plaintiffs spent in unsuccessfully prosecuting MSDC and NSV which did not benefit the successful aspects of plaintiffs' case.

The sharp division between plaintiffs and defendants on the question of reasonable hours is substantially attributable to their divergent characterizations in the case.

Plaintiffs contend that the case involved a one count complaint alleging a conspiracy between defendants and others to deny clinical psychologists the direct reimbursements that are customary when services are rendered by a licensed physician. Plaintiffs' position is that the entire case was an integrated effort to establish some means by which they could force a change in the Blue Shield policy.

Defendants characterize the case as an aggregate of claims alleging at least two distinct conspiracies based on divergent theories which they would divide into at least five different subcategories. Their view is that plaintiffs' primary purpose was to prove a conspiracy between NSV and BSV to boycott clinical psychologists, and also to establish a conspiracy between BSV, BSSW and MSDC. They assert that plaintiffs attempted to "bolster their proof of these 'conspiracies' " by attempting to show that the joint administration of "national account" contracts by the three Blue Shield plans constituted a restraint of trade, that the Medical Society of Virginia, an unnamed co-conspirator, had conspired with the BSV, and that physician members of the Blue Shield plans were guilty of "internal" conspiracies to restrain the trade of clinical psychologists. Defendants assert that each of these claims was based upon different facts and therefore entirely severable.

The Court disagrees with defendants' characterization of the case. Obviously, the case involved numerous issues, as to which plaintiff won some and lost others. The epicenter was the single overriding claim of a conspiracy to deny direct payments to clinical psychologists and the relief sought was the termination of the indirect bill-through procedures used by the Blue Shield plans. The issues noted by defendants were intertwined tentacles that were all part and parcel of the same overall claim. The case simply did not involve the sort of fractionable claims and issues for which defendants contend.

The MSDC was dismissed as a defendant on 20 October 1978 pursuant to a joint

motion. The NSV prevailed on the merits at trial and on appeal. Bloomfield states in his affidavit of 23 September 1981 that Furr and he were the only attorneys to work on matters pertaining to MSDC and that a total of 23.4 hours were spent on that aspect of the case. Half of that time, 11.7 hours, was allocated to the *McCready* case and is not reflected in the present fee petition. Plaintiffs do not suggest that MSDC time contributed to the successful portion of the case. Accordingly, 11.7 hours will be subtracted from plaintiffs' time.

Defendants assert that as much as 90% of plaintiffs' time was devoted to NSV matters. There is no basis for such gross assertion.[15] Moreover, the relationship that NSV and its members had with the Blue Shield Plans as it pertains to the instant matter suggests that almost all the time expended on NSV matters likely contributed and was perhaps crucial to the successful aspect of plaintiffs' case against BSV and BSSW. Information developed from plaintiffs' efforts against NSV appears to have played an important role in the Court of Appeals' ruling against the Plans. Thus, the time spent on NSV matters in this case falls in part within the *Baughman* exception for time spent on matters relating to a prevailing defendant but which also contribute to successful aspects of the case.

Plaintiffs concede that some NSV time was not otherwise related to successful aspects of the case and must therefore be discounted. Plaintiffs' failure to attribute particular segments of time to particular issues or defendants, though perhaps understandable, means that plaintiffs must bear the burden of this Court's estimate of the time that was so devoted. *See Baughman v. Wilson Freight Forwarding Co., supra,* at 1215. *See also Knutson v. Daily Review, Inc., supra; Wall Products Co. v. National Gypsum Co., supra,* at 975. The Court has reviewed the docket entries, has considered NSV's position in relation to other defendants throughout the litigation, and has endeavored to estimate the time devoted to NSV on appeal to the Fourth Circuit. The Court concludes that about 10% of plaintiffs' time between the initiation of the suit and the submission of post-trial briefs on 2 February 1979, comprising about 162 hours must be deducted. Plaintiffs assert that no time was spent on NSV after September 1980 when the Fourth Circuit announced its decision. The Court determines, however, that about 5% of plaintiffs' time on appeal or about 63 hours must be deducted. Accordingly, a total of 225 hours will be deducted from plaintiffs' claim.

■ Such deductions do not appear to transgress Section 16's dictates. As the court in *Baughman* stated, though in the context of Section 4, it would be unreasonable to require a defendant to reimburse plaintiff for time spent pursuing parties against whom plaintiff could not make a case. 583 F.2d at 1214. To award such fees would put defendants, particularly in a close case, under great pressure to settle if other more culpable defendants had previously bailed out through settlement. The Court is also aware that a plaintiff may expend a far greater effort in an unsuccessful attempt to prove a close case than a simple one. To deny him fees would arguably contravene the purpose of the Antitrust Fee Act by discouraging such suits. The Court is assuaged by its belief that the deduction in a close case involving injunctive relief will likely be relatively small as information developed against one defendant will probably be of use against others. Moreover, the Court believes that potential abuse of the Act will be reduced by emphasizing that counsel should carefully consider and continually reassess the merits of the case against one of several defendants.[16]

---

15. Defendants suggest in their brief that notwithstanding their contention that 90% of plaintiffs' hours were spent on NSV, they would accept a reduction of 50% of plaintiffs' hours on this point.

16. The Court also recognizes that the burden on a plaintiff in a Section 16 case is considerably less than in a Section 4 case. A Section 4 plaintiff must establish a defendant's liability for a proven injury to be entitled to attorney fees. Absent a judgment on the merits there will be no such award.

Defendants also assert that an additional 3.5% reduction should be made to reflect time devoted to *McCready* which plaintiffs have claimed on the VACP fee petition. *McCready* was dismissed on 10 October 1978. Plaintiffs' affidavits and brief indicate that all time pertaining to the *McCready* case as reflected on the daily time sheets has already been deducted. Lewis, Mitchell & Moore established a separate account for *McCready* from the outset and charged all allocable time attributable to *McCready* to that account. When Furr or others worked on matters that benefitted both *McCready* and the instant case, an allocation of time was made between the two cases and billed accordingly. Thus, there is no *McCready* time reflected in the fee petition from Lewis, Mitchell & Moore. The Court has also reviewed the daily time records of the Dunnells, Duvall, Bennett & Porter firm and is satisfied that in accordance with plaintiffs' submissions 50% of the hours claimed between 1 June 1978 and 10 October 1978, except for time clearly allocable to VACP or *McCready*, has been deducted from the fee petition. In sum, all time in any way attributable to *McCready* has been excluded. The Court is satisfied that plaintiffs' counsel have been forthright in allocating time to the *McCready* case and no additional deduction needs to be made in this regard.

 The other theory on which defendants challenge plaintiffs' hours is that a deduction must be made for all "matters" or "issues" as to which the plaintiffs were unsuccessful. Plaintiffs' position is essentially that it is entitled to fees for all time spent on matters that a reasonable attorney would have pursued in litigating the case. Both parties amass considerable support for their respective postures reflecting the current disarray of the law in this area. But, upon consideration of this authority and the need to apply it in a manner consistent with the purpose of the Antitrust Fee Act, the Court concludes that plaintiffs' position represents the better view. In so doing, the Court is mindful that the legislative history of the Antitrust Fee Act stresses the "greater need" for attorneys fees in Section 16 cases than in Section 4 cases and that the Act mandates the Court to award fees in a manner which has been interpreted in the legislative history of the analogous Civil Rights Fee Act, to include an award "as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" S.Rept., *supra* at 5913 *quoting Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444 (D.C.Cal.1974); *Stanford Daily v. Zurcher, supra.*

Most of defendants' authority derives from Section 4 cases which in the main appear to limit a court's authority to award fees only as to issues on which a plaintiff prevails. *See e.g., Phillips v. Crown Central Petro. Corp.*, 602 F.2d 616 (4th Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1021, 62 L.Ed.2d 756 (1980); *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978); *Advanced Business Systems & Supply Company v. SCM Corp.*, 415 F.2d 55 (4th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970); *Knutson v. Daily Review, Inc.*, 479 F.Supp. 1263 (N.D.Cal.1979); *Chapman v. Pacific Telephone & Telegraph*

Under Section 16, a plaintiff need only substantially prevail to earn his entitlement to fees. That may include situations where plaintiff has obtained relief from a defendant without benefit of a final judgment over a defendant. *See e.g., Grumman Corp. v. LTV*, 533 F.Supp. 1385 (E.D.N.Y.1982). However, even under Section 16 a plaintiff must be required to come out ahead before he can assert a claim for attorneys fees.

Congress' purpose in awarding attorneys' fees in antitrust and other kinds of suits is to encourage prospective plaintiffs to pursue such litigation. The Court cannot know whether the method selected by Congress will so encourage plaintiffs or so discourage defendants that the spirited litigation in the adversary tradition as evidenced in this case will give way to something less desirable as the sheer weight of financial expense causes defendants to cave in unnecessarily or spurs plaintiffs to litigation at the first faint blush of a possible violation.

Though a matter about which the Court is concerned, the method of encouragement is a question of policy, not law. Policy decisions are the province of Congress and it is incumbent upon judges to follow their rules. If the rule works well the nation benefits, if the rule works ill then Congress can change it. That is not the task of this Court.

*Co.,* 456 F.Supp. 77 (N.D.Cal.1978) (Title VII and Equal Pay Act Action); *Locklin v. Day-Glow Color Corp.,* 378 F.Supp. 423, 428 (N.D.Ill.1974); *Bowl America, Inc. v. Fair Lanes, Inc.,* 299 F.Supp. 1080 (D.Md.1969). But see *Pitchford Scientific Instrument Corp. v. PEPI, Inc.,* 440 F.Supp. 1175 (W.D. Pa.1977), *aff'd,* 582 F.2d 1275 (3d Cir. 1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979); *Blackgold Ltd. v. Rockwool Industries, Inc.,* 529 F.Supp. 272 (D.Colo.1981) (awarding fees for *all* time reasonably spent).

A closer review, however, finds defendants' authority to be distinguishable. The general fact pattern of defendants' cases involves situations where one or more plaintiffs alleges multiple and distinct damage claims for separate items of relief which, in turn, are based on distinct legal theories. As such, the cases are fractionable into independent segments reflecting the different claims and which the court can segregate and assess individually. If a court determines plaintiff has failed to establish the liability of a defendant or fails to show injury it then reduces the attorneys' fee accordingly. Such cases, however, are more in line with the issue of prevailing parties addressed in *Baughman* than the issue presently under consideration. Under Section 4, a plaintiff does not prevail unless he establishes liability and damages. Thus, failure in that regard obviously proscribes an award of attorneys' fees.

Notwithstanding the language of these opinions, that plaintiff should recover only for its wins and not for its losses, in their application of this rule the relevant court has generally looked beyond mere loss and found that deductible time was "expended on theories . . . . or overdrawn items of damage[s] ultimately rejected by the trier of fact," *Vandervelde v. Put & Call Brokers,* 344 F.Supp. 157, 160 (S.D.N.Y.1972); *Locklin v. Day-Glow Color Corp., supra* at 428, or that plaintiff's efforts had in fact hindered or unnecessarily complicated a resolution of the merits of the case, *Phillips v.*

*Crown Central Petro. Corp.,* 602 F.2d 616, 635–36 (4th Cir. 1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1021, 62 L.Ed.2d 756 (1980); *Wall Products v. National Gypsum, supra* at 975, or were unsuccessful "to the point of frivolity." *Siegal v. Merrick,* 619 F.2d 160, 160 n.10 (2d Cir. 1980), *distinguishing, Altman v. Central Ga. Ry. Co.,* 188 U.S.App. 396, 580 F.2d 659 (D.C.Cir.1978). *See also Osborn v. Sinclair Refining Co.,* 207 F.Supp. 856, 864 (D.Md.1962), *rev'd on other grounds,* 324 F.2d 566 (4th Cir. 1963).

The case before this Court is distinguishable on either ground. The instant matter is based on an integrated theory of collusive conduct for which a single claim of relief is asserted commonly. There are no severable issues other than those that might be artificially severed by surgery that could not have been contemplated by Section 16. Nor does this case evidence the mismanagement or abusive tactics that concerned the courts in *Vandervelde, Locklin, Crown, Wall* or *Siegal.* Moreover, even that line of cases accepts the principle that hours are compensable, though spent on losing "claims", where they were expended on activities that "contributed" to successful aspects of plaintiff's case. See *Knutson v. Daily Review, Inc., supra,* at 1269 n. 6; *Baughman v. Wilson Freight Forwarding Co., supra; Hughes v. Repko,* 578 F.2d 483 (3d Cir. 1978).

This is not to say that plaintiffs' degree of success is irrelevant. The Court must consider plaintiffs' degree of success overall in determining the fee award. *Wheeler v. Durham City Board of Education,* 585 F.2d 618 (4th Cir. 1978); *Gurule v. Wilson,* 635 F.2d 782, 794 (10th Cir. 1980); *Lamphere v. Brown University,* 610 F.2d 46, 47 (1st Cir. 1979). Both parties would agree that if plaintiffs pursued claims that were meritless, frivolous or brought in bad faith, they would not be entitled to attorney's fees for that part of the case. *Gurule v. Wilson, supra,* at 794; *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir. 1979).[17]

---

17. *See also, Pitchford Scientific Instruments Corp. v. PEPI, Inc.,* 440 F.Supp. 1175, 1178

(W.D.Pa.1977), *aff'd,* 582 F.2d 1275 (3d Cir. 1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790,

The instant case falls more in line with the civil rights actions to which both defendants and plaintiffs make reference. The leading case under the Civil Rights Fee Act is *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624 (6th Cir. 1979). In *Northcross*, the Court of Appeals for the Sixth Circuit rejected the proposition that plaintiffs' fees should be reduced for lost issues or parts of issues. The court stated:

> The question as to whether the plaintiffs have prevailed is a preliminary determination, necessary before the statute comes into play at all. Once that issue is determined in plaintiffs' favor, they are entitled to recover attorneys' fees for "all time reasonably spent on a matter." The fact that some of that time was spent in pursuing issues on research which was ultimately unproductive, rejected by the court, or mooted by intervening events is wholly irrelevant. So long as the party has prevailed on the case as a whole the district courts are to allow compensation for hours expended on unsuccessful research or litigation, unless the positions asserted are frivolous or in bad faith. There are numerous practical reasons why a court may not be permitted to dissect a lawsuit into "issues and parts of issues as to which the plaintiffs did not prevail," especially by decimating the total hours claimed with arbitrary percentages. Suffice it to say, however, that Congress has mandated that a prevailing party's attorney should be compensated "as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter." We know of no "traditional" method of billing whereby an attorney offers a discount based upon his or her failure to prevail on "issues or parts of issues". Furthermore, it would hardly further our mandate to use the "broadest and most flexible reme-

dies available" to us to enforce the civil rights laws if we were so directly to discourage innovative and vigorous lawyering in a changing area of the law. That mandate is best served by encouraging attorneys to take the most advantageous position on their clients behalf that is possible in good faith.

611 F.2d at 636. *Accord, Jones v. Diamond*, 636 F.2d 1364, 1381–82 (5th Cir. 1981) (*en banc*), *cert. dismissed*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981); *Gurule v. Wilson, supra*, at 793–94 (10th Cir. 1980); *Lamphere v. Brown University, supra*, at 47 (1st Cir. 1979); *Wheeler v. Durham City Board of Education*, 88 F.R.D. 27, 33 (M.D. N.C.1980); *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D.Cal.1974), *aff'd*, 550 F.2d 464 (9th Cir. 1977).

In *Jones v. Diamond*, 636 F.2d 1364 (5th Cir.) (*en banc*), *cert. dismissed*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981), a prisoners' rights case seeking injunctive and monetary relief, an en banc panel of the Fifth Circuit, the circuit from which this circuit has derived its standards for attorneys' fees, reiterated the directive of the Senate Report to the Civil Rights Fee Act that the application of the *Johnson* standards should be the same in both civil rights and antitrust cases. The Court stressed that the difficulties of such litigation merited a cautious attitude by a court considering a reduction of hours for lost issues.

> In fixing the fee, the district court should be mindful that in complex civil rights litigation, and particularly in prisoners' rights cases, issues are overlapping and intertwined. In order to represent their clients adequately, attorneys must explore fully every aspect of the case, develop all of the evidence and present it to the court. Time spent pursuing unsuccessful claims that were clearly without merit should be excluded. However, the

60 L.Ed.2d 242 (1979); *Blackgold Ltd. v. Rockwool Industries, Inc.*, 529 F.Supp. 272, 278 (D.Col.1981) (compensating under § 4, of all issues "that a reasonable and prudent antitrust lawyer would have litigated"). The reasons underlying the denial of compensation pursuant to Section 4 for the pursuit of unproductive

theories in antitrust actions, may be attributable to the particular policies that have developed regarding treble-damage actions. *See Seigal v. Merrick*, 619 F.2d 160, 165 n. 10 (2d Cir. 1980); *Knutson v. Daily Review, Inc.*, 479 F.Supp. 1263, 1269 n. 6 (N.D.Cal.1879).

mere fact that the litigants did not succeed in obtaining a judgment on all of the claims asserted does not mean that time spent pursuing these claims should automatically be disallowed. Instead, the court must consider the relationship of the claims that resulted in judgment with the claims that were rejected and the contribution, if any, made to success by the investigation and prosecution of the entire case.

636 F.2d at 1381–82.

In *Wheeler v. Durham City Bd. of Ed.*, 88 F.R.D. 27 (M.D.N.C.1980), on remand from a Fourth Circuit mandate that the district court consider the degree of plaintiff's success in a school desegregation case, *see Wheeler v. Durham City Bd. of Ed.*, 585 F.2d 618 (4th Cir. 1978), the court clarified some of the confusion that has arisen in attorneys fee cases by distinguishing between the preliminary determination of whether plaintiff prevailed on the issues in order to be a "prevailing party" and entitled to attorney fees at all, and the issue of whether the award to a "prevailing party" should be proportionate to the extent of the recovery. The court posited three categories of cases: (1) a suit for damages where the amount recovered is a relatively trifling sum; (2) a multi-issue employment discrimination suit involving disparate issues of job classification, reinstatement, back pay, seniority rights and retaliatory discrimination; and (3) a suit to desegregate public schools.

> In the first of these three examples, ... a consideration of "the amount involved and the results obtained" is properly taken into account as Johnson's eighth guideline. In the second .... and third .... examples, trial judges have a more difficult task in the application of the Eighth Guideline. Basing the fee in direct proportion only to what plaintiffs have "won" in those examples is an abandonment of considering the dozen Johnson criteria as a whole. Moreover, the emphasis that is placed on "winning" in those circumstances is a threshold consideration that must be reached in determining whether a particular plaintiff is a

> "prevailing party" in the first place—a determination that should be made before courts engage in evaluating the entire case by means of the Johnson guidelines for purposes of fixing a reasonable fee.... In cases where equitable relief is sought, perhaps "what was at stake and what was achieved" is a more useful phrase than "the amount involved and the results obtained." The latter phrase has been interpreted at times in a way that has penalized attorneys for seeking forms of relief not granted by the courts precisely, though the overall result achieved might have been the vindication of substantial rights of plaintiff. In a changing area of law, attorneys should not be penalized for failure to foreknow the extent of the relief a court will grant. Vigorous advocacy of opposing points of view is the heart of the adversary system of justice.

88 F.R.D. at 32–33 (citations omitted). The Court finds the reasoning in *Wheeler* persuasive. The case before this Court, though by no means on the outer edges of antitrust law, is analogous to the third *Wheeler* model. It is a case where all the issues are intertwined constituting a single parcel of goods. In such cases to penalize a prevailing plaintiff for its failure to win every motion or issue would not be in keeping with the mandate to award "reasonable" attorneys' fees. *See Copeland v. Marshall*, 641 F.2d 880, 892 n. 18 (D.C.Cir.1980) (*en banc*); *Gurule v. Wilson, supra*, at 793–94; *Lamphere v. Brown University, supra*, at 47.

There are of course instances where the Court in considering the degree of plaintiffs' success will discover that counsel seeks compensation for time spent on "substantial separate issues" on which plaintiffs did not prevail. Were such a situation present here, it would be well within the discretion of the Court, in considering the "reasonableness" of the time spent, to deduct some or all of such time. There is, however, no authority mandating the Court to engage in an artful dissection of the instant litigation so that it might make

some mechanical reduction or one based on what would be little more than arbitrary percentages.

The Court has been intimately involved with all aspects of the litigation, except the appeal, since 1978. The Court has reviewed defendants' "dissection" of the case and finds it to be the sort of mechanical dissection for which there is no support in the relevant legislation.

There is no evidence that the time spent by plaintiffs on any area of the case was conducted in bad faith, in pursuit of a frivolous or meritless claim, or was in any way unreasonable. To the contrary, plaintiffs have pursued the case in an efficient and orderly manner that reflects planning and an efficient marshalling of time and resources. Plaintiffs acted reasonably in their selection of defendants, and in the case they attempted to build against them. There were no substantial separate issues that plaintiffs pursued unsuccessfully. All issues were part and parcel of the core matters in controversy between the parties. For the Court to attempt to deduct time for lost motions or issues in this case would be little more than arbitrary speculation which would transgress the underlying purpose of Section 16 and thereby discourage counsel from undertaking such cases in the future.

> Conditioning an award of attorney's fees upon the ability of the attorney to portend the ultimate outcome of the case could result in many meritorious claims never being prosecuted. Attorneys representing plaintiffs ... should not be required to choose between raising only those claims on which success is assured or risk having to forego compensation for their services.

*Dowdell v. City of Apopka, Fla.*, 521 F.Supp. 297, 301 (M.D.Fla.1981). Accordingly, plaintiffs' claimed hours will be reduced under this factor by only 237.38 hours being the aggregate of 11.7 hours mentioned on page 20, and 225 hours mentioned on page 21.

*2. The customary fee for like work.* The second factor which the Court is to consider is the "customary fee for similar work in the community." *Anderson v. Morris, supra*, at 248 (4th Cir. 1981). *See also, Johnson v. Georgia Highway Express, Inc., supra*, at 718 (5th Cir. 1974). Although a fee paying client has considerable latitude in selecting counsel according to the fees he will charge, there is no reason why a court should award a skimpy fee or expect counsel to work for bargain basement rates just because the fee award is statutory. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973); *Pitchford Scientific Instruments Corp. v. PEPI, Inc.*, 440 F.Supp. 1175 (W.D. Pa.1977), *aff'd* 582 F.2d 1275 (3d Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979).

An appropriate starting point for this factor is an attorney's normal billing rate which in most instances should accurately reflect the value of the attorney's time and the willingness of a fee-paying client to pay. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., supra*, at 167. *See also Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1313–14 (8th Cir. 1981); *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1275 (8th Cir.), *cert. denied*, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980); *Port Terminal & Warehousing Co. v. John S. James Co.*, 92 F.R.D. 100 (S.D.Ga.1981). In a particular case, there may be several applicable rates to reflect various services, such as those performed by partners and associates, *Anderson v. Morris, supra*, at 249; *Johnson v. Georgia Highway Express, Inc., supra*, at 717, or to reflect compensation for activities which command a diminished rate or which should have been assigned to other personnel in the firm. *See, e.g., Johnson v. Georgia Highway Express, Inc., supra*, at 717–718 (non-legal work may command lesser rate); *Steinberg v. Carey*, 470 F.Supp. 471, 479–80 (S.D.N.Y.1979) (lower rate applied for travel and administrative duties). *See also, Younger v. Glamorgan Pipe & Foundry Co.*, 418 F.Supp. 743, 794 (W.D.Va.1976); *In Re Equity*

Funding Corp. Securities Litigation, 438 F.Supp. 1303, 1330 (C.D.Cal.1977) (court should determine that tasks were performed at appropriate level but was unwilling to scrutinize every hour to determine which category is more important for billing purposes).

■ The court should also consider the rates charged by defense counsel, *see Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, (7th Cir. 1981); *Port Terminal & Warehousing Co. v. John S. James Co., supra*, 92 F.R.D. 100; *In Re Equity Funding Securities Litigation, supra*, at 1330, and the rates charged for similar work by attorneys in the locality where the services were rendered. See *Chrapliwy v. Uniroyal, Inc., supra; Klanton v. Allied Chemical Corp.*, 649 F.2d 1084, 1102–03 (5th Cir. 1981); *Wallston v. School Board of City of Suffolk*, 566 F.2d 1201, 1205 (4th Cir. 1977); *City of Detroit v. Grinnell Corp., supra*, 495 F.2d at 471; *Johnson v. Georgia Highway Express, Inc., supra* at 718.

This analysis should enable the Court to arrive at a fee rate not outside the "zone of reasonableness," *Pitchford Scientific Instruments Corp. v. PEPI, Inc., supra*, at 1177, as compared with the fees charged by defense counsel and the prevailing community rate.[18]

A second concern is whether to award fees based on an "historical rate", the rate in force at the time the services were rendered, or at a "current" rate, the rate in force at present. The Court of Appeals for the Fourth Circuit has no decision on point and where courts have bothered to explain the basis for their determination of a rate the split of authority is almost even. As a practical matter, however, in most instances the result under either approach is about the same. Although some courts in a few cases have applied a strict historical rate, *see e.g., Klanton v. Orleans Parish School*

Board, 649 F.2d 1084 (5th Cir. 1981); *Kane v. Martin Paint Stores*, 439 F.Supp. 1054, 1055 (S.D.N.Y.1977), aff'd, 578 F.2d 1368 (2d Cir. 1978), the more common rule is for a court applying an historical rate to subsequently adjust the fee award upwards by means of a multiplier to reflect the deteriorative effect of inflation.[19] *See In Re Equity Funding Securities Litigation, supra*, at 1331; *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976); *Blackgold, Ltd. v. Rockwool Industries, Inc., supra* at 276.

To deny any consideration of the effect of inflation, particularly where it has been so severe during the course of this litigation, imposes a real deterrent to prospective plaintiffs' counsel and obviously encourages defense counsel to delay. The use of a multiplier, unless in some way indexed to the inflation rate, requires the court to engage in the sort of standardless discretion which should be avoided. Moreover, the latter method is merely an indirect means by which a court increases the historical rate to what is, in effect, the current rate. On the other hand, if the "lodestar" itself is based on *present* hourly rates, rather than historical rates, the harm resulting from delay in payment may be largely reduced or eliminated. *Copeland v. Marshall, supra*, at 893 n. 23. This Court, given the choice and absent contraindications, favors the direct approach of determining the current rates for a particular attorney. *Accord, Chrapliwy v. Uniroyal, Inc., supra; Jorstad v. IDS Realty Trust, supra*, at 1313–14 (current rate as of the time of the fee petition); *International Travel Arrangers, Inc. v. Western Airlines, Inc., supra*, at 1275; *In Re Ampicillin Antitrust Litigation*, 81 F.R.D. 395, 402 (D.C.D.C.1978); *New York v. Darling-Delaware*, 440 F.Supp. 1132, 1134 (S.D.N.Y.1977).

*Sherrill v. J. P. Stevens & Co., Inc.*, 441 F.Supp. 846, 848–49 (W.D.N.C.1977), aff'd, 594 F.2d 858 (4th Cir. 1979).

**18.** Notwithstanding the unsettled state of the law on this point, courts in using the above guidelines have not hesitated to award rates higher than the "local rate" in appropriate circumstances. *See e.g., Chrapliwy v. Uniroyal, Inc., supra; International Travel Arrangers, Inc. v. Western Airlines, Inc., supra*, at 1275;

**19.** Perhaps this troublesome problem is receding.

■ This action was filed originally in Alexandria, Virginia, and was transferred to Richmond for the Court's convenience. Plaintiffs' counsel are from the Washington metropolitan area, Lewis, Mitchell & Moore having offices located in Vienna, Virginia and Washington, D. C., and Dunnells, Duvall, Bennett & Porter having an office located in the District of Columbia. Plaintiffs assert that the relevant "community" should be the Washington area whereas defendants assert that Richmond is the appropriate forum of consideration. Both parties have submitted affidavits setting forth the rates that they charge for the services of various attorneys in their respective firms. In addition, plaintiffs have submitted affidavits attesting to the reasonableness of their counsels' fees, affidavits setting out the fees of large Washington, D. C. and other major law firms. Defendants have responded with affidavits setting out the fees charged by their respective counsels' firms and other Richmond and Roanoke firms.[20]

Although plaintiffs contend that the relevant community is the Washington, D. C. area, the Court notes that this is in essence a Virginia case. All of the relevant parties are residents of Virginia, the acts complained of occurred in Virginia, and the litigation has all taken place in Virginia. The Potomac River has divided this nation in war and in peace. Even more than the Mason-Dixon line, it separates the solid South of yore from the kaleidoscopic North. It still serves as a physical, and a metaphysical, division between the national and international politics and concerns of the nation's capital and the more parochial problems of the Commonwealth. In any event, the fees clients are willing to pay to the so-called "super lawyers" in the District of Columbia (or those in close proximity thereto), while interesting and informative, cannot serve to influence strongly this Court's determination of an appropriate fee to be paid to a lawyer carrying on litigation on the banks of the James. In short, the information contained in the affidavits is considered, but it is not given controlling weight in this case.

■ As more fully reflected in the Appendix, Messrs. Furr and Bloomfield seek fees at the current rate of $120 per hour. Since 1978, Furr's fee has risen from $90 to $120, and Bloomfield's has risen to that figure from $85. Mr. Kriegel, a 1977 law school graduate, is billed at a current rate of $90 reflecting a rise from $50. Mr. Brownell, a 1978 law school graduate, is billed at a graduated rate from $65 to $90 reflecting his professional development. The fees charged for paralegal and law clerk time generally are in the $25 to $35 range, though the Dunnells' firm would charge up to $50 for 1981 law clerk time.

The Court has considered the fees charged by defendants' counsel as well as the several other firms that practice in Virginia to which defendants refer the Court. The fees charged by McGuire, Woods & Battle are comparable, if a shade lower, than those of plaintiffs' counsel. The fees of the other firms referred to by defendants are considerably lower. The Court is of the

20. The Court has before it defendants' fully briefed motion to strike certain of plaintiffs' affidavits, primarily those relating to the fees paid to lawyers in District of Columbia law firms. Defendants rely upon the Court's bench ruling of 12 November 1981 striking the affidavit of E. Waller Dudley. The Dudley affidavit purported to compare certain unnamed, but specific, lawyers in his firm with specific lawyers representing plaintiffs in this action. The Court has no doubt as to Mr. Dudley's good faith or as to his probity in making the comparisons, and assumes counsel for plaintiff have similar regard for Mr. Dudley. Nevertheless, as advocates in this case, plaintiffs' counsel had every right to probe the accuracy of his opinion as to comparability. Indeed, they had a duty to do so. Their inability to exercise that right rendered the Dudley affidavit inadmissible.

The relevant affidavits to this motion are not of the Dudley genre. They contain no opinion or comparison. They simply state facts within the personal knowledge of the affiants. As to these facts, defendants had every opportunity under Fed.R.Civ.P. 31 to probe. There is no unfairness involved in ruling out the Dudley affidavit and ruling in the plaintiffs' affidavits. This is no "sauce for the goose" situation. While the motion to strike the affidavits is denied, the weight to be given the affidavits is something else again.

opinion that if it were to follow defendants' suggestion that it award fees to plaintiffs based on an average of the fees charged by these other firms, such award would be inadequate.

This is not a case where plaintiffs imported inordinately high priced counsel to combat a less experienced defense team. *See e.g., International Travel Arrangers, Inc. v. Western Airline, Inc., supra*, at 1275; *Kane v. Martin Paint Stores, supra*, at 1056. Conversely, plaintiffs' counsel have confronted a defense team that is equally competent, staffed in greater depth, and whose lead counsel commands fees approximate to those being sought by plaintiffs' counsel. Plaintiffs should be compensated accordingly. *See Chrapliwy v. Uniroyal, supra.*

In reaching a determination on the appropriate fee to be charged for plaintiffs' counsel, the Court notes that most of the hours under consideration were accrued prior to 1981. The Court also recognizes that this was originally an Alexandria case and that it was moved to Richmond at the Court's request. Defendants have not challenged plaintiffs' assertion that its fees are reasonable for the northern Virginia area and there is no evidence that plaintiffs suddenly raised their fees with the instant litigation in mind. The Court has considered the legal training and experience of plaintiffs' counsel who have appeared before it in person and by writing. The case itself, though challenging and requiring diligent effort, was not of the magnitude of the large antitrust class actions to which plaintiffs' counsel would seek comparison.

The Court is of the opinion that an hourly rate of $120 is excessive for this case. Accordingly, a fee of $105 per hour will be used as the rate of compensation for the hours claimed by Furr and Bloomfield. The Court has greater difficulty with the hourly rate of associates because of the different ways in which the two plaintiffs' firms have billed for these hours. For hours accrued during 1978 and through August, 1979, the Lewis, Mitchell & Moore firm would bill Brownell's and other associates' time at a current rate of $65, presumably reflecting the relative inexperience of the attorneys. The current hourly rate for Brownell was raised to $75 in September, 1979, to $80 in September, 1980, and to $90 in August, 1981. The Lewis, Mitchell & Moore firm also has a classification for junior partner for which it would charge a uniform current rate of $90 per hour.[21] By way of contrast, the Dunnells, Duvall firm would bill all of Kreigal's time at a current rate of $90. However, in 1980 and 1981, the firm billed at a current rate of $65 and $70 for two other associates. The Court has not been furnished with any explanation for these latter fees but they suggest that Kriegel's rate should be adjusted.

The approach taken by the Lewis, Mitchell & Moore firm reflects a more accurate value of the associates than the Dunnells, Duvall method, particularly when dealing with attorneys like Brownell and Kriegel who were in their first and second year of practice when this action commenced. This is all the more so when compared to rates charged for associate time by defendants' firms which range from $35 to $40 in 1978 to $60 to $65 in 1981. Accordingly, the hourly rate for Brownell and Kriegel will be based on the Lewis, Mitchell & Moore graduated method so that during associate's first year in practice a rate of $65 per hour will be charged, $75 an hour during their second, and $80 thereafter. Junior partner time will be compensated at a rate of $80 per hour. A rate of $70 will be applied uniformly for associate time where the experience of the associate is unknown and a higher rate has been claimed. Where the Court has reduced the number of claimed hours for associates over a span of years an average rate of $72.50 has been uniformly applied.

The use of paralegals and part-time law clerks in a case frees higher-priced attorneys to concentrate their efforts in areas

---

**21.** In its 23 November 1981 compilation of hours, Lewis, Mitchell & Moore attribute 91.4 hours of 1981 time to junior partners. 91.2 hours of this time has been attributed to Brownell who had previously been characterized as an associate.

more demanding of their expertise. The fees charged for such personnel by the relevant firms to this litigation discloses a range from $25 to $37 per hour. A fee of $35 per hour for paralegals and law clerks is not unreasonable but where plaintiffs claim a lower current rate for some law clerk time, the Court will not supplement the hourly rate which plaintiffs request.

The Court determines that based on these rates the "lodestar" fee for this case is $348,438.25. The Court, having determined the lodestar must consider the remaining ten *Johnson* factors to determine whether this fee should be adjusted further. The Court believes that the lodestar should provide in most cases a sufficient award to fully compensate attorneys and attract others in the future. Adjustments to the lodestar should not be made in a casual fashion but should reflect significant circumstances that merit reward or penalty.

*3. Novelty and Difficulty of the Questions Raised.* Although the contentious spirit in which this action has been litigated evidences that both parties considered the case to be important, it was not unusually complex or difficult. The suit involved the application of traditional antitrust principles to a new set of facts. That there was no prior criminal conviction on which plaintiffs could rely merely required them to carry the traditional burden of a civil action rather than have the burden eased. The case did involve a novel consideration of certain exceptions to the antitrust laws on which plaintiff, though unsuccessful at trial, prevailed on appeal. In short, the case was a challenging but not out of the ordinary antitrust suit and no adjustment would be appropriate under this factor.

*4. Skill Required to Properly Perform the Legal Services Rendered.* The Court is of the opinion that the case required no special skill other than what might be expected of any attorney litigating an antitrust action in this Court. Plaintiffs suggest that because defendants hired special high-priced lawyers to perform such refined tasks as drafting their petition for writ of certiorari to the Supreme Court they should be entitled to a premium rate since they did their own work. This argument is without merit. Just as the challenger who steps into the boxing ring with the champion could not expect to share the gate equally, an attorney should be compensated with a reasonable fee for his or her particular level of skill which may or may not be equivalent to that of opposing counsel.[22] Plaintiffs' counsel held its own in this case despite their being outmanned at times and no doubt pressed to the limit by defendants' demands and other constraints. This is how it should be. Attorneys who demand upper level fees are expected to perform at a high level. The Court commends counsel for the standard that they have maintained throughout most of the case but there is no evidence of unusual skill which would merit an adjustment here. *See Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., supra,* at 168.

*5. Attorneys' Opportunity Costs in Pressing Instant Litigation.* Plaintiffs' counsel attest in their affidavits that if they had not been proceeding with this case they would have been employed at an hourly rate for other clients. They assert that their opportunity costs are approximately the cost of the instant litigation. Although during discovery plaintiffs may have been required to forego business which could not be handled by others, the pace of the litigation since early 1979 has not been such that the Court would find that other members of the plaintiffs' firms could not adequately take up the slack. Accordingly, no adjustment will be made for this factor.

*6. Attorneys' Expectations at the Outset of the Litigation.* The Court notes that this factor under *Johnson* is phrased as being, "whether the fee is fixed or contin-

---

**22.** Parties are always at liberty to hire additional counsel so long as they are willing to pay the fee. Plaintiffs' counsel were obviously up to the task of meeting defendants' superstars and, as such, would not necessarily have been entitled to any extra fee had they instead decided to hire their own stable of thoroughbreds. *See Chrapliwy v. Uniroyal, Inc., supra; International Travel Arrangers, Inc. v. Western Airlines, supra,* at 1275.

gent." *Johnson v. Georgia Highway Express, Inc., supra* at 719. This case was handled on a contingent fee basis and, as such, courts have generally recognized that a contingent fee lawyer may have the right to expect a fee greater than if his fee were guaranteed. *See Jones v. Diamond, supra* at 1382. *See also, Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., supra,* at 168. The lodestar figure was computed by the Court without consideration of this factor. Though Congress mandates no contingency bonus, the courts applying the various attorneys' fee statutes have recognized that a contingent fee case is in some sense a gamble on the merits of each case. This case was by no means a sure winner. Indeed, this Court determined it to be a loser. Nevertheless, plaintiffs' suggested multiplier of 2 to 3 is excessive. The Court will award plaintiffs a 15% bonus, or $52,265.74, to reflect the contingent nature of the case.

Defendants vigorously contend that plaintiffs should be limited to an award of fees of $10,000 for all of the work performed during the first year of litigation. They base this assertion on an agreement between VACP and its counsel, and counsels' reasonable expectation in light of that agreement. In *Johnson v. Georgia Highway Express, Inc., supra,* the court cautioned that while it would not be bound by any contractual agreement between party and counsel, "the litigant [should never] be awarded a fee greater than he is *contractually* bound to pay [his attorney], if indeed the attorneys have contracted as to amount." *Id.* at 718. In a subsequent case, *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575 (5th Cir. 1980), the Fifth Circuit, applying the *Johnson* factors, appeared to reject this limitation in holding that an attorney's fee award which was limited to the equivalent of a fee contract between plaintiffs and their counsel was so low as to constitute an abuse of discretion. *Id.* at 583.

There are two situations for which a party might enter into an agreement with its counsel. In the first, they might agree to some exorbitant sum which counsel would subsequently use as the basis for its claim. In such an action, the court would properly not be bound by the terms of the agreement. However, the court might justifiably hold that since the award inures to the benefit of the plaintiff for the purpose of paying counsel fees, plaintiff should not be awarded an amount in excess of the amount he is obligated to pay. The second situation involves a party who may be concerned about the high cost of litigation and obtains an agreement with counsel that counsel will not charge more than a specified sum during a set period of time.

The Court is satisfied that such agreement as existed between VACP and counsel was not a fee contract as contemplated by either *Johnson* or *Copper Liquor.* Rather, it was an agreement designed to put a ceiling on the expenses, as opposed to counsel fees, which might be incurred by counsel during the first year of litigation for which VACP would be liable whether or not they proved successful in litigation. The promise to contribute to counsel fees such amount of the $10,000 that was not consumed by expenses could not reasonably have formed the basis for a fee contract. Moreover, it is apparent that the attorneys accepted the case expecting that whatever fee they would earn would be based on a Section 16 award. In other words, counsel agreed, in effect, that if they did not "substantially prevail" they would not be paid a fee.[23] Accordingly, other than the contingency bonus, no deduction or other adjustment is merited under this factor.

*7. Time Limitations Imposed by the Client or Circumstances.* This factor is designed to afford a premium for "priority work that delays the lawyer's other legal work" and is "particularly important when a new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Johnson v. Georgia Highway Express, Inc., supra* at 718. Although the time between the filing of the

---

**23.** *See* note 2, *supra.*

complaint and the trial itself required a determined effort on the part of counsel, the demands imposed were not sufficient to merit an adjustment under this factor.

8. *Amount in Controversy and Results Obtained.* As noted during the discussion of the first factor, much of the controversy in this case after remand has rested on the extent to which plaintiffs prevailed. As monetary damages were not involved, this factor is difficult to fit into the balance without overshadowing other factors in this case.[24]

This Court agrees with the other courts that have, when faced with a situation where equitable relief has been sought, rephrased this factor. In *Wheeler v. Durham City Board of Education, supra,* 88 F.R.D. 27, stated:

> In cases where equitable relief is sought, perhaps *"what was at stake and what was achieved"* is a more useful phrase than the "amount involved and the results obtained". The latter phrase has been interpreted at times in a way that has penalized attorneys for seeking forms of relief not granted by the courts precisely, though the overall result achieved might have been the vindication of substantial rights of plaintiffs.

88 F.R.D. at 33.

The Court recognizes that this standard is akin to that which the Court uses in making the initial determination of whether plaintiff "substantially prevailed" in the first place. *See Bonnes v. Long,* 599 F.2d 1316 (4th Cir. 1979); *F & M Shaefer Corp. v. C. Schmidt & Sons, Inc.,* 476 F.Supp. 203 (S.D. N.Y.1979). This does not suggest that the factor should be used as a basis on which to rehash the issue of who prevailed in the case. That issue is now decided. At this point, the Court's concern is how much did plaintiffs prevail.

Clinical psychologists, prior to instituting this suit, were required to submit their charges through a licensed physician if they sought reimbursement from the Blue Shield plans. The instant litigation established that such a procedure violated the antitrust laws and that, henceforth, clinical psychologists were to be allowed to bill the Plans directly. The suit established that clinical psychologists were to be treated *in pari passu* with other medical service subscribers of the Plans. Plaintiffs also assert that they derived some positive monetary effect from the decision. Defendants contend that the instant litigation had nothing to do with their decision to change their billing procedures and that their view is substantiated by this Court's denial of any prospective relief in the matter. This view has been rejected previously by the Court.

The Court is concerned that so many hours and such a large fee should be necessary to establish the points which were made in this case and which, to the world at large, may seem trivial. That perspective, however, is not the proper approach to this case. Professional pride and some economic benefit are of considerable concern to VACP and its members. Plaintiffs' challenged the very right of defendants to control the Blue Shield plans and that obviously was very important to the defendants. Plaintiffs have accomplished almost all that they set out to do and defendants' vigorous defense of the suit at all stages is not consonant with their assertion that the suit had no effect on their policies and procedures. The intervention of other events that obviated the need for prospective relief does not diminish plaintiffs having established their entitlement to such relief. Whether one views this case from a perspective of the amount in controversy and results obtained or in terms of what was at stake and what was achieved there is not much room for argument that plaintiffs have emerged with almost all of the marbles. This factor favors plaintiffs but the Court is of the opinion that the plaintiffs

---

**24.** The Fifth Circuit in *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 583 (5th Cir. 1980), suggested that this factor and the ninth factor, together with the first and fifth, were the four most significant factors a court should consider.

have already been compensated for the time they invested and the Court sees no reason to supplement it further on account of this factor.

9. *Experience, Reputation and Ability of the Attorneys.* Messrs. Furr and Bloomfield are 1967 graduates of the University of Virginia Law School who have since been engaged in practices with considerable antitrust content, some of national significance. Their performance before this court has been of generally high calibre. They are good lawyers.

Messrs. Kriegel and Brownell are, respectively, 1977 and 1978 law school graduates. Both had considerable supporting roles in this matter. Although the Court has not had an opportunity to observe these two to any substantial extent, nothing has led the Court to believe that their performance is less than lawyerlike. In short, plaintiffs' counsel have performed at a level which may properly be expected of those who appear before the Court on such matters. Such a performance merits neither extra reward nor penalty.

10. *Undesirability of the Case Within the Legal Community in Which the Suit Arose.* This factor plays a minimal role, if any at all, in this litigation. Plaintiffs make no suggestion that such a case would be undesirable in the community and defendants aptly suggest that plaintiffs' counsel may have hoped to improve their careers by undertaking this litigation.

11. *Nature and Length of the Professional Relationship Between Attorneys and Client.* Prior to this litigation, there had been no contact between plaintiffs and their counsel. Counsel are not on retainers.

Counsel have, from the outset, expected to recover their fees pursuant to Section 16 and, with the exception of the previously discussed "agreement", there is no arrangement between plaintiffs and counsel regarding fees.

12. *Attorneys' Fee Awards in Similar Cases.* The parties have referred the Court to no other cases where attorneys fees have been awarded pursuant to Section 16 of the Clayton Act. Plaintiffs note that the fees claimed here by Bloomfield and Kreigal were expressly approved by the United States District Court for the District of Maryland in *In Re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305, 79–2 Trade Cas. (CCH) ¶ 62, 860 (D.Md. 1979). They also make reference to *American General Insurance Co. v. Equitable General Corp.*, 87 F.R.D. 736 (E.D.Va.) (plaintiffs' petition for attorneys' fees served May 27, 1980), a complex federal securities litigation in Richmond where counsel represented that hourly rates ranging from $120 for partner time to $70 for associate time would be reasonable compensation. Defendants refer the Court to a number of the cases which have been discussed throughout this opinion, emphasizing that in most cases deductions have been made from the fees plaintiffs have requested.[25]

The Court has considered the adjustments made in these cases and notes that each has its own characteristics, as does the instant matter, which distinguishes one from another. Although the Court is disturbed by the size of fee to be awarded plaintiffs in this case, much of it is a direct consequence of the unusually determined

---

**25.** *See Altman v. Central of Georgia Ry. Co.*, 580 F.2d 659 (D.C.Cir.1978); *Advance Business Systems & Supply Co. v. SCM Corp.*, 415 F.2d 55 (4th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F.Supp. 1195 (S.D.N.Y.1979), *aff'd*, 622 F.2d 1106 (2d Cir. 1980); *Knutson v. Daily Review*, 479 F.Supp. 1263 (N.D.Cal.1979); *Kane v. Martin Paint Stores, Inc.*, 439 F.Supp. 1054 (S.D.N.Y.), *aff'd mem.*, 578 F.2d 1368 (2d Cir. 1978); *Newberry v. Washington Post Co.*, 438 F.Supp. 470, 1977–2 Trade Cas. (CCH) ¶ 61, 759 (D.D.C.1977); *Acme Precision Products, Inc. v. American Alloys Corp.*, 347 F.Supp. 376 (W.D.Mo.1972), *rev'd on other grounds*, 484 F.2d 1237 (8th Cir. 1973); *Vandervelde v. Put & Call Brokers & Dealers Associates, Inc.*, 344 F.Supp. 157 (S.D.N.Y.1972); *Bowlamerica, Inc. v. Fair Lanes, Inc.*, 299 F.Supp. 1080 (D.Md. 1969).

and tenacious defense of the Blue Shield plans. This factor distinguishes this case from many of the others to which the parties refer. While the Court wishes that litigation over a matter such as this would not result in such large fees, the statute mandates the instant award and this Court cannot say the fees are unreasonable.

## IV

Plaintiffs suggest that the lodestar fee previously determined by this Court should be increased by a "multiplier" of between 2 and 3 to reflect the contingency of the case and the quality of performance, as is the practice in circuits following the Lindy/Grinnell analysis. *See Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir. 1973); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974); *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3rd Cir. 1976); *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir. 1977). Although the Fourth Circuit's application of the *Johnson* factors, as modified by *Anderson*, has become similar to the *Lindy/Grinnell* model, it nevertheless remains distinct in that any adjustments up or down are to be made in conjunction with the twelve factors rather than using a multiplier at the end of the process. The contingency aspect of the case was specifically addressed in the sixth factor. The Court also has addressed the quality of counsels' performance.[26]

## V

Plaintiffs are also entitled to recover the costs of the suit, which they originally set forth as being $36,650.13. During negotiations prior to the filing of the fee petition, the parties agreed that certain costs would not be included in the fee petition which resulted in a deduction of $3008.61 from the original fee petition. Three areas of dispute remain: (1) the cost for the expedited portion of the trial transcript; (2) defendants' demand for a 10% reduction in reproduction costs due to alleged inefficiencies caused by participation of two law firms; and (3) the cost of deposition and trial transcripts pertaining to issues upon which plaintiffs did not ultimately prevail.

These proposed deductions have little merit. First, plaintiffs have already agreed to reduce copy costs from $0.15 to $0.12 per copy, a 20% reduction. Second, the suggestion to expedite reproduction of the trial transcript apparently was initiated by defendants and agreed to by plaintiffs. In any event, both parties benefitted by the expedited reproduction considering the Court's request for post-trial briefs. Third, the Court sees no reason to impose a percentage reduction for deposition and trial transcripts pertaining to issues upon which plaintiffs did not ultimately prevail. The Court does not believe that costs are subject to such a reduction. But in any case, the Court did not reduce attorney time in this regard and sees no reason to reduce costs either. Accordingly costs in the amount of $34,603.47 are awarded to plaintiffs.[27]

---

**26.** It is not surprising that a reviewing court would favor a fractionalized approach to setting attorneys' fees and require "*detailed* findings of fact with regard to the [twelve] factors considered," *Barber v. Kimbrell's Inc., supra*, at 226, by a district court's making a fee award. Moreover, a district court is bound to comply with such a mandate. The procedure mandated by *Barber*, however, in attempting to fill all the interstices, so fragments the analysis that a coherent picture of the case is all but unobtainable. *Anderson* alleviates partially the fragmentation problem and hence is more realistic. Nevertheless, the court's and counsels' attention is still diverted by the need to frame their respective analysis on a Procrustean bed of 12-factors that prevents a balancing of conflicting factors or a melding of complimentary factors so essential to a determination of an overall conclusion. As a consequence, the proofs and briefs of counsel, and a properly considered opinion of the court, are unnecessarily prolix and redundant. The case is forced to fit the mandated analysis rather than the analysis conforming to the case.

**27.** In computing the costs set out in the following chart, the Court has made appropriate adjustments to correct several minor discrepancies that appear in the record of monthly charges and the various compilations thereof.

## VI

At a hearing held on 2 November 1981 the Court directed defendants to pay to plaintiffs the sum of $25,000 to silence plaintiffs' claims that defendants would wear down plaintiffs financially to the point that they could not proceed further with litigation of the case. This sum must be deducted from the total award. Accordingly, the total award of attorneys' fees in the amount of $400,703.99 and costs in the amount of $34,603.47, reduced by $25,000 results in a total award in this case of $410,307.46.

## VII

The remaining issue affecting the award in this case is the effect that should be given to the VACP–BSSW settlement. The VACP–BSSW settlement was reached in March, 1982, long after the Fourth Circuit Court of Appeals had found that both BSV and BSSW had violated the Sherman Act, and on the morn of this Court's determination of the fee issue. Plaintiffs' contend that the Court should proceed to determine the attorneys' fees and costs as if there had been no settlement, and, thereafter, reduce the award by the amount of the settlement so as to prevent a double recovery. BSV contends that the award of fees and costs should be reduced by the greater of 50% of the total fee or the amount of the settlement.

The Court finds two factors to be of prime importance in its consideration of this issue. The first factor is the congressional purpose underlying the Antitrust Fee Act which mandates a fee award for substantially prevailing Section 16 plaintiffs. The second factor is the Fourth Circuit's decision in this action that BSSW and BSV were both found liable. The Antitrust Fee Act and its legislative history indicate clearly that Congress wanted plaintiffs to sue defendants for antitrust violations. More-

over, Congress wanted to alleviate plaintiffs' concern about the costs and fees for such litigation, and it wanted lawyers to be eager to bring such suits without undue regard for the wealth of their clients. Congress' only condition precedent to full payment of attorneys' fees was a showing that plaintiffs "substantially prevailed" over defendants. Here, plaintiffs won against two defendants and Congress intended for plaintiffs to receive full payment for reasonable attorneys' fees and costs for having so prevailed.

Plaintiffs assert that once liability for attorneys' fees is established the Court should treat the allocation between defendants in the same way it would treat the allocation of damages. Under Section 4, a defendant is held to be jointly and severally liable with all other losing defendants for all damages awarded in a judgment. *See Texas Industries Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 646, 101 S.Ct. 2061, 2070, 68 L.Ed.2d 500 (1981). Where a settlement with some but not all defendants is accomplished, the amount of settlement is generally deducted from the total award of damages. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 348, 91 S.Ct. 795, 811, 28 L.Ed.2d 77 (1971); *Flintkote Co. v. Lysfjord,* 246 F.2d 368, 398 (9th Cir.), *cert. denied,* 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957). Similarly, antitrust attorneys' fees have been lumped together with damages for purposes of applying this rule in a damage action under Section 4 of the Clayton Act. *See Semke v. Enid Automobile Dealers Ass'n,* 320 F.Supp. 445, 447 (W.D.Okl.1970).

The parties have been unable to cite to the Court, and the Court has been unable to locate, any authority directly on point. Such tangential authority as exists does not conflict with plaintiffs' position. In *Baughman v. Wilson Freight Forwarding Co., su-*

Plaintiffs' costs are as follows:

| | LMM | DDB & P |
|---|---|---|
| 1978 | 7,956.58 | 5,579.37 |
| 1979 | 13,898.69 | 3,707.03 |
| 1980 (thru Oct.) | 890.07 | 1,182.59 |
| 1981 (Incl. Nov., Dec. 1980) | 2,054.82 | 2,342.83 |
| Subtotal | 24,800.16 | 12,811.82 |

| | LMM | DDB & P |
|---|---|---|
| Reductions Per Agreement | 1,075.27 | 1,933.34 |
| Total Costs Claimed | 23,724.80 | 34,603.47 |
| Total | 34,603.47 | |

pra, the court awarded plaintiff fees against the one defendant, out of an original five, found to be liable. The *Baughman* court assumed there was joint and several liability for attorneys' fees and that a plaintiff would be entitled to fees expended in pursuit of all defendants found liable. But, as only one defendant was found liable, that defendant could not be required to pay fees attributable exclusively to the prosecution of other defendants which had not been found liable. In this respect, the situation faced by Judge Dupree in *Burlington Industries, Inc. v. Deering Milliken, Inc.*, 42 Antitrust & Trade Reg.Rep. (BNA) 413 (D.S.C. 10 Feb. 1982), is similar to *Baughman*. There, the settling defendant, Leesona, had not been found liable. Therefore, the court had no power to hold the single remaining defendant jointly and severally liable with Leesona for the total amount of fees earned. Although *Baughman* and *Burlington Industries* are distinguishable, and do not specifically address the issue here, neither decision is inconsistent with the principle that a losing defendant is jointly and severally liable for attorneys' fees with all other *losing* defendants.

■ On the facts of this case, the law provides that BSV and BSSW would be, but for the BSSW settlement, jointly and severally liable for all plaintiffs' attorneys'

fees.[28] It is true that the rule applied here may produce unfair results in certain situations. But, were the Court to hold otherwise, the congressional mandate to fill prevailing plaintiffs' cup would be evaded and defendants who were otherwise liable would enjoy a windfall. That would be a greater injustice and it would be contrary to the goal of the Antitrust Fee Act. Therefore, the Court will deduct from plaintiffs' award only that amount which has been allocated to the VACP fee in the settlement agreement between VACP and BSSW.

Now that the Court has determined the amount due plaintiffs' in this case and the effect of the settlement, it is prepared to consider the amount of the settlement currently under seal. Accordingly, one day following the entry of this order, the Court will break the seal, deduct the amount of settlement from the total attorneys' fees and costs awarded, and the Clerk is DIRECTED to enter judgment against the defendant, BSV, for the remaining amount. Within 10 days of entry thereof, BSV may file any appropriate motion pertaining to the settlement agreement or the allocation made in that agreement between this case and other related cases encompassed in the settlement.

And it is so ORDERED.

## APPENDIX

| Attorney | Status | Hours Claimed | MSDC Reduc. | NSV Reduc. | Adj. Hours | $ Rate | Net Fee |
|----------|--------|---------------|-------------|------------|------------|--------|---------|
| Furr | (P) | 1216.30 | 5.7 | 72.0 | 1138.6 | 105 | 119,553.00 |
| Bloomfield | (P) | 968.75 | 6.0 | 58.0 | 904.75 | 105 | 94,998.75 |
| Brownell | (A&JP) | 1099.6 | – | 65.0 | 1034.6 | 65–80 | 74,144.00 |
| Kriegel | (A) | 499.75 | – | 30.0 | 470.25 | 75–80 | 36,528.75 |
| Schlitz | (A) | 77.0 | – | – | 77.0 | 70 | 5,390.00 |
| Herald | (A) | 22.8 | – | – | 22.8 | 65 | 1,482.00 |
| Fitzgerald | (JP) | 13.4 | – | – | 13.4 | 80 | 1,072.00 |
| Newman | (A) | 5.0 | – | – | 5.0 | 65 | 325.00 |
| Johnson | (A) | 3.9 | – | – | 3.9 | 65 | 253.50 |
| Bennett | (P) | 1.25 | – | – | 1.25 | 105 | 131.25 |
| Keith | (A) | 1.0 | – | – | 1.0 | 70 | 70.00 |

**28.** This point does not speak, of course, to calculations which the Court has made in ruling on the plaintiffs' petition for attorneys' fees and costs.

| Attorney | Status | Hours Claimed | MSDC Reduc. | NSV Reduc. | Adj. Hours | $ Rate | Net Fee |
|---|---|---|---|---|---|---|---|
| McKibbon | (A) | 0.75 | – | – | 0.75 | 65 | 48.75 |
| Martin | (A) | 0.5 | – | – | 0.5 | 70 | 35.00 |
| Mardulla | (JP) | 0.2 | – | – | 0.2 | 80 | 16.00 |
| Paralegals & Law Clerks | | 143.5 | – | – | 143.5 | 25 | 3,587.50 |
| | | 308.65 | – | – | 308.65 | 35 | 10,802.75 |
| Totals | | | | | | | $348,438.25 |
| Contingency Award | | | | | | | 52,265.74 |
| Total Fee | | | | | | | $400,703.99 |

| | |
|---|---|
| Total Fee Award | $400,703.99 |
| Total Costs | 34,603.47 |
| Subtotal | 435,307.46 |
| Partial Award Paid by Defendants | (25,000.00) |
| Total Award | $410,307.46 |